## ELLEN L. WOODWARD *vs.* JOHN K. SARTWELL.

Middlesex.   Jan. 13, 1879. — July 10, 1880.   COLT & SOULE, JJ., absent.

A. conveyed a parcel of land to B., and B., as part of the same transaction, recon-
veyed the land to A. The first deed was at once recorded, but the second deed
was not recorded until some months afterwards, it being the intention of the
parties that it should not be recorded, in order that the record title should be in
B. *Held*, that a creditor of B., without notice of the unrecorded deed, could
attach the land as his property.

Under the St. of 1874, *c.* 188, the right, title and interest of a debtor in land may
be sold on execution, and such sale will pass such estate as the debtor had at
the time of the attachment.

At the time of an attachment of the right, title and interest of A. in land, the
record title stood in his name, but he had previously conveyed the land by deed,
which was recorded after the attachment and before the levy on execution.
The attaching creditor had no knowledge of the deed until it was recorded.
The right, title and interest in the land, which A. had at the time of the attach-
ment, was sold on execution, under the St. of 1874, *c.* 188, and the deed of the
officer described the land conveyed in the same manner. *Held*, that the pur-
chaser took a good title to the land as against A.'s grantee.

It is no objection to the sale of land on execution, that it is made at the office of
the officer making the sale, which office is in his dwelling-house.

WRIT OF ENTRY, dated November 16, 1877, to recover a par-
cel of land in Watertown. Plea, *nul disseisin.* Trial in the
Superior Court, before *Allen,* J., by whose direction the jury
returned a verdict for the tenant; and the demandant alleged
exceptions. The facts appear in the opinion.

*J. S. Abbott,* for the demandant.

*D. F. Fitz & J. H. Sherburne,* for the tenant.

ENDICOTT, J. The demandant, being in possession of this
estate in her own right, conveyed the same, her husband join-
ing, by quitclaim deed, to one Burnham, and Burnham conveyed
to W. L. Egerton, who reconveyed to the demandant. The first
two deeds were dated, acknowledged, and recorded on June 13,
1876; the last deed was also dated, acknowledged, and deliv-
ered to the demandant on that day, but was not recorded until
June 14, 1877. Neither Burnham nor W. L. Egerton paid any
consideration, or was ever in actual possession of the premises.
The jury have found that the deed from W. L. Egerton to the
demandant was not delivered to her with the other deeds for the
purpose of being recorded with them, nor with the intention of

passing the record title forthwith to her; and also that it was the intention of the demandant that this deed should not be recorded, and that the record title of the land should be placed in W. L. Egerton.

While the record title thus stood in W. L. Egerton, his right, title and interest in the land were, on November 27, 1876, attached on the writ of J. O. Egerton, and, judgment having been obtained in the action, on July 3, 1877, soon after the deed of W. L. Egerton to the demandant was recorded, the right, title, and interest of W. L. Egerton in the same were sold on execution under the St. of 1874, *c.* 188, to J. O. Egerton, from whom the tenant derives his title. Neither J. O. Egerton nor the tenant had any actual knowledge of the deed from W. L. Egerton to the demandant till the trial of this cause.

The first question is, Did W. L. Egerton have any right, title or interest which could be attached while the estate stood in his name upon the record, although he had parted with his interest by a deed given to the demandant, which was not intended by the parties to be recorded, and was designedly withheld from the records?

It is settled in this Commonwealth, that where a person to whom land is conveyed by deed immediately conveys the land to another, so that the deeds are parts of the same transaction, and the seisin is instantaneous and only for the purpose of conveyance, his wife can have no dower in the land, and it is not the subject of an attachment by his creditors. *Holbrook* v. *Finney*, 4 Mass. 566. *Chickering* v. *Lovejoy*, 13 Mass. 51. *Clark* v. *Munroe*, 14 Mass. 351. *Haynes* v. *Jones*, 5 Met. 292. See also *Burns* v. *Thayer*, 101 Mass. 426; *Borden* v. *Sackett*, 113 Mass. 214. The fact that the deeds were executed on the same day, though strong, is not conclusive, evidence that the seisin was instantaneous; that may be a question for the jury to decide on all the facts and circumstances of the case. *Webster* v. *Campbell*, 1 Allen, 313. *Hazleton* v. *Lesure*, 9 Allen, 24.

In this case that inference is rebutted by the finding of the jury, that, while all the deeds were executed, acknowledged and delivered at the same time, and were parts of one transaction, the last was withheld from the record by the demandant in order that the record title should stand in the name of W. L. Egerton.

It seems to have been the object of the conveyance to place the record title merely in Egerton, without giving him any real interest in the estate as against the demandant. If none of the deeds had been recorded, the case would have fallen precisely within the case of *Haynes* v. *Jones, ubi supra*; but the difficulty arises from the fact, that, while the deed to W. L. Egerton was recorded, the deed from him was not. The seisin he acquired was really instantaneous; but the record did not disclose, and it was not intended that it should disclose, that fact to a purchaser or an attaching creditor, and this seems to have been the object of the transaction. Great stress is laid in *Haynes* v. *Jones* on, the fact that McIntire, through whom the title passed, was not in possession of the estate, and had no title by a recorded deed; and it was held to be sufficient to defeat the attachment that he had conveyed whatever title he had by deed also unrecorded.

As the demandant allowed, and it was the intention of the parties that she should allow, for some purpose, the record title to stand thus for a long time, we are of opinion that the land was liable to attachment as the property of W. L. Egerton by a *bona fide* creditor without notice. Had Egerton sold to a third party without notice, the deed, when recorded, would have been good against the prior unrecorded deed of the demandant. *Norcross* v. *Widgery*, 2 Mass. 506. *Flynt* v. *Arnold*, 2 Met. 619.

An attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase and takes precedence of a prior unrecorded deed. *Marshall* v. *Fisk*, 6 Mass. 24. *M'Mechan* v. *Griffing*, 9 Pick. 537. *Roberts* v. *Bourne*, 23 Maine, 165. It is true that, as between W. L. Egerton and the demandant, the title to the land was in the demandant; but, as the deed may affect the rights of purchasers or attaching creditors, as to them it is necessary that there should be actual notice or constructive notice by registry. *Earle* v. *Fiske*, 103 Mass. 491. *Fiske* v. *Chamberlin*, 103 Mass. 495. The demandant, therefore, by recording her deed in June 1877, a few days before the judgment was rendered against W. L. Egerton, in the action in which the attachment was made, gained no rights as against J. O. Egerton,

the attaching creditor.  The recording of her deed operated as a conveyance of the estate subject to the attachment made on November 27, 1876, and disclosed the fact that W. L. Egerton had parted with his interest in the land to the demandant before the attachment was made; but, as the title stood in his name on the record, he still had an attachable interest therein to the same extent as if he had made no conveyance to the demandant. Judgment having been obtained, execution could be levied on the land under the Gen. Sts. *c.* 103, by levy and set-off, or, at the election of the judgment creditor, by sale under the St. of 1874, *c.* 188; and, having elected to have it levied by sale, the purchaser at the sale would take such title as could pass by the sale, if the sale was regular and all proper forms were complied with.  The demandant denies that the sale was regular; and it becomes necessary to consider the statutes under which it was made, and the form of the conveyance under which the tenant claims title.

It is provided in the Gen. Sts. *c.* 103, §§ 1–8, that all lands of a debtor in possession, remainder or reversion, and all rights of entry into such lands, and of redeeming mortgaged lands, may be taken on execution, and, having been duly appraised, may be set off to the execution creditor by metes and bounds with as much precision as is necessary in a common conveyance, and that " all the freehold estate and interest which the debtor has in the premises shall be taken and pass by the levy." § 8. When the right of redeeming mortgaged lands is seized on execution under these sections, the land itself must be set off by metes and bounds; and other provisions in regard to the action of the appraisers and the redemption from the levy are contained in §§ 33–38.   But §§ 39, 40, provide that the right of redeeming mortgaged lands may, at the election of the creditor, be sold on execution by the officer, at auction, and he shall execute a sufficient deed thereof to the purchaser, which, being recorded, shall give to the purchaser all the debtor's right of redemption.   But the officer must sell the entire estate which is at the time of the beginning of the levy bound by the lien of the attachment.   It is clearly the intention of the Gen. Sts. *c.* 103, that the levy of an execution, by a sale and conveyance thus made, of the right which the debtor has in premises subject to

a mortgage, shall have the effect to pass all the freehold estate and interest of the debtor therein, as fully and effectually as if the land were set off by metes and bounds to the creditor. The creditor has his choice, and by either method he can secure the fruits of his attachment.

By the St. of 1874, c. 188, the right thus to sell is extended to any creditor where land is taken to satisfy his execution; and it may be sold "in like manner as the right to redeem mortgaged land is now sold; the officer who serves the execution shall proceed in all respects in the manner prescribed for the sale of such right of redemption." A sale, therefore, may be made, and the estate or interest of the debtor may be conveyed by deed. *Hackett* v. *Buck*, 128 Mass. 369. The land itself may be conveyed, or the right, title and interest of the debtor in the same may be conveyed, and if the latter form of deed is used by the officer, such estate as the debtor had in the premises at the time of the attachment would pass. And if at the time of such conveyance it appears that there was a deed, prior to the attachment, but not recorded till after the attachment and before the conveyance by the officer, in such case we are of opinion that a deed by the officer of the right, title and interest of the debtor at the time of the attachment conveys the interest which he then had. For the deed which conveys in terms the interest which was attached, is equivalent to a conveyance made by the debtor at the time the attachment was made; and in the case at bar, as the record title then stood in the name of the debtor, as to *bona fide* purchasers, he was the owner of the land. *Hall* v. *Crocker*, 3 Met. 245. *Capen* v. *Doty*, 13 Allen, 262. *Earle* v. *Fiske*, *ubi supra*.

The attachment by the officer, in the case at bar, of all the right, title and interest of W. L. Egerton in the estate, was a valid attachment. *Taylor* v. *Mixter*, 11 Pick. 341. *Pratt* v. *Wheeler*, 6 Gray, 520. By virtue of his execution, he seized that which he attached, that is, the right, title and interest of W. L. Egerton in the premises on the day of the attachment. He gave the notices of the time and place of the sale, and published the advertisement as required by law, duly adjourned the sale from time to time, and finally sold the debtor's right, title and interest in the premises, on the day of the attachment, to

the highest bidder. The presiding judge was not bound to give to the jury the third instruction requested.* No evidence relating thereto was introduced by the demandant. It does not appear from the officer's return that the time appointed was improper, or that there was not a fair attendance of purchasers at the time of the sale. It is not necessary that the place of sale should be a public place. Gen. Sts. *c.* 103, § 40. The deed to the purchaser recites the attachment, the seizure, the notices, and the sale, and conveys "the right, title and interest which the said Wales L. Egerton had at the time when the same was attached as aforesaid in and to the following described real estate."

We are of opinion, that this was a sufficient deed of the premises. It was sufficient to describe what was to be sold, the right, title and interest of W. L. Egerton on the day of the attachment, and the deed of the same conveyed that which was attached. A quitclaim deed conveys the land described in it, if the grantor owns the land, and, although Egerton had parted with his interest, the record title remained in him, and as to third persons it was as if he had not conveyed it by deed unrecorded. It is the interest as it appears from the records which is attachable.

We are also of opinion, under our decisions previously cited, that a conveyance of the right, title and interest by the apparent owner on the record, or an attachment of his right, title and interest afterwards, followed by a levy and conveyance under the St. of 1874, *c.* 188, of the right and interest so attached, carries with it the apparent title of record, which the vendor or debtor has, even when there is a prior deed of the land unrecorded, for,

---

* This request was as follows: " That if the jury should be satisfied from the evidence that the time when the sale described in the deed of John M. Fisk [the officer] to Egerton was made, and that the time appointed in the published notice of sale was at an unusual and unreasonable hour for a public sale, and that the place was a private and not a public place, and that neither the time nor place of sale was such as to give a reasonable expectation of a fair or ordinary attendance of purchasers or bidders, and that there was not in fact a fair or ordinary attendance of purchasers or bidders, the sale then made would be invalid." The officer's deed stated that the sale was made at his office in his dwelling-house at Newton, at eight o'clock in the morning.

as to attaching creditors and *bona fide* purchasers, he is the owner. *Earle* v. *Fiske, ubi supra.* The demandant cites many cases to sustain the proposition, that, as the deed of the officer conveys only the right, title and interest of W. L. Egerton in the land, and. Egerton had parted with his title, such deed conveys no title whatever.

In *Adams* v. *Cuddy,* 13 Pick. 460, where the owner of a tract of land in Boston conveyed a portion of it, describing it by metes and bounds, and subsequently executed another deed conveying all the right and title to "the land I have in Boston" to a second grantee, and containing no other description, which deed was recorded before the prior deed, it was held that the portion of land which was described in the prior deed did not pass to the second grantee, as coming within the general description of the estate conveyed in the subsequent deed. This conclusion was reached by the construction which the court gave to the two deeds. It was contended that the second deed did not include the land conveyed by the prior unrecorded deed, and also that the grantee in the second deed had notice of the prior convey-ance. The court decided both these questions against the de-fendant, who held under the second grantee. It is said in the opinion, that the deed is illiterate and informal; that it contains no covenants of any kind, or any specific description of any land; and that, where a grantee takes by so indefinite a description as to the right which the grantor has, he must take the risk of his grantor's right, and where the grantor had legally parted with a particular estate in Boston, that estate did not come within the general description of the estate granted to the second grantee. And the court remarked, "Were it construed otherwise, the grantors might in effect commit a fraud, without intending or even being conscious of it."

But in the case at bar there is in the officer's deed a specific description of the premises, and the officer is not required to make any covenants, except that he has complied with the rules of law in relation to the sale.

Nothing decided in *Blanchard* v. *Brooks,* 12 Pick. 47, *Comstock* v. *Smith,* 13 Pick. 116, or *Wight* v. *Shaw,* 5 Cush. 56, has any material bearing on the question in. controversy here, and we are not aware of any case in our own reports, where a deed of

this description has been held to be invalid against a prior unre corded deed of the same land.

In *Brown* v. *Jackson*, 3 Wheat. 449, Henry Lee, the devisee under the will of Alexander Skinner conveyed the tract of land in controversy specifically by metes and bounds to Henry Cragg, describing himself as devisee of Skinner, and the plaintiff in error claimed title under Cragg. This deed was not recorded until after a subsequent deed from Henry Lee to Henry Banks, under whom the defendant in error claimed title. This deed to Banks granted " all the right, title and claim which he the said Alexander Skinner had, and all the right, title and interest which the said Lee holds, as legatee and representative of the said Alexander Skinner, deceased, of all land lying and being within the State of Kentucky, which cannot at this time be particularly described, whether they be by deed, patent, mortgage, survey, location, contract, or otherwise ; " with a covenant of warranty against all persons claiming under Lee, his heirs and assigns ; but there was no covenant of warranty against those claiming under Skinner. Mr. Justice Todd, in delivering the judgment, stated the general proposition, that a conveyance of the right, title and interest in land, is certainly sufficient to pass the land itself, if the party conveying has an estate therein at the time of the conveyance, but it passes no estate which was not then possessed by the party. And he adds : " If the deed to Banks had stopped after the words ' all the right, title and claim which Alexander Skinner had,' there might be strong ground to contend that it embraced all the lands to which Alexander Skinner had any right, title or claim, at the time of his death, and thus have included the lands in controversy. But the court is of opinion, that those words are qualified by the succeeding clause, which limits the conveyance to the right, title and claim which Alexander Skinner had at the time of his decease, and which Lee also held at the time of his conveyance ; and coupling both clauses together, the conveyance operated only upon lands, the right, title and interest of which was then in Lee, and which he derived from Skinner. This construction is, in the opinion of the court, a reasonable one, founded on the intent of the parties, and corroborated by the terms of the covenant of warranty. Upon any other construction, the deed must

be deemed a fraud upon the prior purchaser; but in this way both deeds may well stand together, consistently with the inno‑ cence of all parties."

It is to be observed that this description is even more general than that in *Adams* v. *Cuddy;* and, as in that case, the conclu‑ sion of the court is reached by a construction of the instruments founded on the manifest intention of the parties, and corroborated by the terms of the covenant of warranty. But it is clearly and distinctly intimated by the court, that, if the deed to Banks had stopped after the words "all the right, title and claim which Alexander Skinner had," it might have included the lands in controversy, from which we are to infer that, as the title to the land was in Skinner at the time of his death, a deed from Lee of the right, title and interest which Alexander Skinner then had in the land would be good as against a prior unrecorded deed from Lee conveying the land by metes and bounds.

In *Coe* v. *Persons Unknown*, 43 Maine, 432, the petitioner for partition claimed to have four thousand acres in a township, held in common and undivided, set off to him in severalty. This town‑ ship consisted of twenty-two thousand and eighty acres of land, and was originally owned by S. A. Bradley, who conveyed the four thousand acres in common and undivided to George Evans, by deed dated November 1836, and recorded January 1849, and Evans conveyed the same to the petitioner, by deed dated No‑ vember 1850, and recorded December 1852. Robert Bradley appeared in defence, and set up a mortgage deed to himself and Richard Bradley from S. A. Bradley, of all his right, title and interest in and to said township, subject to a mortgage of the same to James Rundlet. This mortgage to Robert and Richard Brad‑ ley was dated after the deed to Evans, but recorded before, to wit, in June 1844. The mortgage to Rundlet of eighteen thousand acres was dated after the deed to Evans, but was recorded be‑ fore Evans's deed, and was assigned to Robert Bradley in 1849. There was another mortgage by S. A. Bradley of land in this township to Mary Ann Bradley, who died in 1841, Robert Brad‑ ley being her sole heir at law; but this mortgage has no bear‑ ing on the case, as it was not recorded until 1854, after the deeds to Evans and the petitioner were recorded. It was con‑ tended that the mortgage deed to Bradley, being recorded before

the prior deed to Evans, took precedence of that prior deed. But again we have a case that turns upon the construction of a deed, which obviously by its terms was not intended to include, and did not include, the land embraced in the prior unrecorded deed to Evans. The township contained twenty-two thousand and eighty acres, and the owner, having conveyed four thousand acres to Evans in common and undivided, mortgages eighteen thousand of the same in common and undivided to Rundlet. He then gives to Bradley a mortgage of all the right, title and interest which he has in the township, " subject to a mortgage of the same " to Rundlet. The extent of the right, title and interest conveyed is defined by the deed itself, as that which he has in the eighteen thousand acres mortgaged to Rundlet, and no more. Rundlet had no mortgage of the township, but only of eighteen thousand acres of the same, and Bradley takes only the right of redemption in this eighteen thousand acres, and the deed does not include the four thousand acres previously conveyed to Evans. The court so decided, and the reasoning of the court is unanswerable. The court also puts the case on the ground, that, when a grantee takes by so indefinite a description as the right, title and interest which the grantor has, he must take the risk of the grantor's right, title and interest, and the covenants in the deed are qualified and limited, and cannot be enlarged by the grant, and therefore, whether the deed to Evans was registered or not, as Bradley had parted with his title to him, the title to the land so conveyed did not come within the general description of the estate conveyed to Bradley. This certainly was not necessary to the decision.

The facts and the deed differ materially from the facts and deed before us; and we do not regard the case as authority upon which we can decide that a deed by a person in whose name the record title stands, conveying all his right, title and interest in a specific parcel of land, duly recorded, is invalid by reason of a prior unrecorded deed conveying the land itself, of which the purchaser had no notice; and we do not find that any of the cases cited by the court on that point so decide. Having a record title, there is something which he can convey to a *bona fide* purchaser, or which can be attached by a creditor, ignorant of the prior unrecorded deed.                    *Exceptions overruled.*