## CAMPBELL v. KEYS.

1. ATTACHMENT—PRIORITY—UNRECORDED MORTGAGE.
   An attachment levy is a lien only upon the interest in the land owned by the debtor at the time of the attachment, and is not entitled to priority over an unrecorded mortgage.

2. SAME—AMENDMENT OF STATUTE.
   Act No. 227, Pub. Acts, 1889 (3 Comp. Laws, § 9224), amending the statute relating to levies of execution on real estate, does not change the provisions of the statute (3 Comp. Laws, § 10564) relating to attachment levies, so as to give a lien

upon the title as it stood of record when the attachment levy was made.

3. SAME—LIEN—EXECUTION.

Where a levy by attachment is followed by an execution levy, the latter does not relate back so as to give a lien upon the title as it stood of record when the attachment levy was made.

Appeal from Clinton; Stone, J. Submitted November 13, 1901. (Docket No. 101.) Decided March 26, 1902.

Bill by Oliver B. Campbell and Thomas P. Steadman against Horace N. Keys, Antha D. Keys, and George Bane to foreclose a mortgage. From a decree dismissing the bill as to defendant Bane, complainants appeal. Reversed.

*H. E. Walbridge* and *High & Everett*, for complainants.

*Almond G. Shepard* and *Edwin H. Lyon*, for defendant Bane.

MOORE, J. The bill of complaint was filed to foreclose a mortgage given by the defendants Horace N. Keys and Antha D. Keys to Campbell, Keys & Steadman, to secure the payment of a note dated January 2, 1894, for $2,645. The mortgage is dated February 19, 1897, and is for the sum of $1,000. This mortgage was recorded in the office of the register of deeds May 3, 1897. A default was entered against the defendants Horace N. Keys and Antha D. Keys for want of appearance and answer. The defendant George Bane appeared and defended on the ground that he had caused a levy of attachment to be made upon the premises covered by the mortgage on the 28th day of April, 1897. The trial court found a decree against Horace N. Keys and Antha D. Keys for the sum of $1,000. The decree also provides that the bill of complaint be dismissed as to George Bane, with costs. The complainants have brought the case to this court, claiming the trial

court erred in dismissing the bill of complaint as to George Bane.

Complainants claim to have established upon the trial of the case, by a fair preponderance of evidence, that the defendant Bane had actual knowledge of the existence of the mortgage at the time he commenced his attachment proceedings, and levied upon the property covered by the mortgage. The defendant Bane claims that he did not have knowledge. The testimony is very conflicting, and is very evenly divided. The proofs were taken in open court. The judge had the advantage of seeing the witnesses. He was of the opinion the complainants had failed to show, by a preponderance of the evidence, knowledge of the existence of the mortgage on the part of Mr. Bane before he commenced his attachment. The evidence does not convince us he was wrong in his conclusion.

We now come to the question whether, in the absence of knowledge by Mr. Bane of the existence of the mortgage, his attachment levy has priority over the unrecorded mortgage. It is the claim of complainants that by his levy Mr. Bane acquired only such interest in the property as his debtor, Mr. Keys, then had, and, as Mr. Keys had then executed the mortgage, it has priority over the levy. The solicitors for defendant Bane say this court held otherwise in *Campbell* v. *Bane*, 119 Mich. 40 (77 N. W. 322), in that part of the opinion reading, "In the present case, Bane's lien is subsequent in date, and his right of priority must be determined by the fact of actual notice of the existence of the mortgage." A reference to that case shows that the questions involved were whether the mortgage could be foreclosed before there had been a final adjustment of the partnership accounts between the complainants and Keys; and, second, whether Bane is a proper party. Both questions were answered in the affirmative; the court holding that, as Bane was a subsequent purchaser or lien holder, he had a right to redeem, and was also entitled to have the amount due on the mortgage determined. The court was not called upon to decide which

lien had priority, and did not intend to so decide; and, if the language quoted is susceptible of the interpretation given it by counsel, it was *dictum*, and not controlling.

It is also said that, since the amendment of 1889 to the statute in relation to the levy of executions, "The lien thus obtained shall, from the filing of such notice, be valid against all prior grantees and [mortgagees] mortgages of whose claims the party interested shall not have actual nor constructive notice." 3 Comp. Laws, § 9224. Section 10564, 3 Comp. Laws, provides:

"Real estate attached shall be bound, and the attachment shall be a lien thereon, from the time when a certified copy of the attachment, with a description of the real estate attached, shall be deposited in the office of the register of deeds in the county where the real estate attached is situated."

And it is urged that, when the levy by attachment is followed by the execution levy, the latter relates back so as to give a lien upon the title as it stood of record when the attachment levy was made. The circuit judge accepted this view. In doing so, it is said, he is supported by *Jerome* v. *Bank*, 22 Colo. 37 (43 Pac. 215); *Woodward* v. *Sartwell*, 129 Mass. 210; and *Bigelow* v. *Topliff*, 25 Vt. 273 (60 Am. Dec. 264).

An examination of these cases discloses that *Jerome* v. *Bank* arose in Colorado, where the statute provides that not until a deed or conveyance is filed for record shall it take effect "as to subsequent *bona fide* purchasers and incumbrancers by mortgage, judgment, or otherwise, not having notice thereof." 1 Mills' Stat. § 446.

In Massachusetts the reason of the opinion in *Woodward* v. *Sartwell* seems to have been that:

"An attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase, and takes precedence of a prior unrecorded deed. *Marshall* v. *Fisk*, 6 Mass. 24 (4 Am. Dec. 76); *McMechan* v. *Griffing*, 9 Pick. 537; *Roberts* v. *Bourne*, 23 Me. 165 (39 Am. Dec. 614)."

As we shall see later, this is not the rule in Michigan. The courts of Vermont have followed the same rule as in Massachusetts.

In 1 Shinn, Attachm. § 10, it is said:

"Attachment is a factor of that system of law which charges the property of a debtor with the payment of his debts. Its purpose is to give to the creditor, from the very commencement of his suit, a lien on the estate of his debtor. It is an anterior process, the purpose of which is to make the jurisdiction of the court in ulterior proceedings more effectual, and to afford the plaintiff security for the satisfaction of the judgment which he may obtain. It is an effort to create a lien upon the debtor's property. The attachment levy from its date operates as such a lien. That is to say, it charges the property levied upon with the payment of the judgment to be rendered, in priority of any subsequent alienations the defendant may make, or of any subsequent incumbrances he may create."

While the law in relation to the levy of executions was amended in 1889, the law in relation to the levy of attachments has remained unchanged since 1875. In *Columbia Bank* v. *Jacobs*, 10 Mich. 349 (81 Am. Dec. 792), it was held that an attachment levy upon real estate only gives the creditor a lien on the debtor's attachable interest in the lands, and in no way interferes with the previously acquired rights of third persons. In *French* v. *De Bow*, 38 Mich. 708, the court cited the case of *Columbia Bank* v. *Jacobs*, and held that the levy of an execution did not give to the creditor any rights analogous to those of a *bona fide* purchaser, and that, until the creditor becomes a purchaser at the execution sale, the creditor stands in the rights of his debtor, and the levy may be defeated by equities which the debtor is unable to resist. See, also, *Michigan Paneling Machine Co.* v. *Parsell*, 38 Mich. 475.

In *Smith* v. *Williams*, 44 Mich. 240 (6 N. W. 662), the court discussed the effect of the recording laws, and, among other things, said:

"But the recording laws could not help the defendants.

Those laws point out specifically the danger to which the party failing to record his title is exposed, and the courts cannot extend or add to it. *Columbia Bank* v. *Jacobs*, 10 Mich. 349 (81 Am. Dec. 792); *Millar* v. *Babcock*, 29 Mich. 528. The danger is indicated by section 4231 of the Compiled Laws [of 1871]:

"'Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded.'

"By 'subsequent purchaser,' in this section, is meant a subsequent purchaser from the same grantor. * * * The mere institution of suit cannot make one a *bona fide* purchaser."

In *Atwood* v. *Bearss*, 45 Mich. 469 (8 N. W. 55), it is held that it is not until the execution creditor has become a purchaser that he obtains anything more than a lien upon the land; but, when he becomes a purchaser, he then becomes entitled to the benefits of the recording act.

The statute in relation to the levy of attachments, as it now reads, was construed in *Avery* v. *Stephens*, 48 Mich. 246 (12 N. W. 211), where, among other things, it was said:

"The statute provides that the writ of attachment shall command the sheriff to attach so much of the lands, etc., of the defendant, not exempt from execution, wheresoever the same may be found within the county; and the sheriff is directed to execute the writ by seizing the lands. Sections 6401, 6402 [2 Comp. Laws 1871]. The statute further declares that real estate shall be bound, and the attachment shall be a lien thereon, from the time when it was attached, on complying with certain provisions, which was done in this case. Section 6406. Where due diligence has been observed by the creditor in the prosecution of his claim, this lien continues until a reasonable time has elapsed for the issuing of an execution and levy thereunder, and there can be no doubt but that the execution levy relates back to the time of the attachment, and holds the interest which the debtor then had."

In a case decided in 1886 (*Manwaring* v. *Jenison*, 61 Mich. 117, 27 N. W. 899), it is said:

"The purchaser under the execution sale does not stand in the relation of a *bona fide* purchaser of the land without notice of the rights of the plaintiff. He only took by his levy the same title his judgment debtors had. It gave him a lien upon all the right, title, and interest of Haven, Blake & Co., but upon no better title."

See, also, *Corey* v. *Smalley*, 106 Mich. 257 (64 N. W. 13, 58 Am. St. Rep. 474).

As between the mortgagor and the mortgagee, it is clear the mortgagor has diminished his interest in the real estate to the amount of the mortgage; and by the decisions of this court a *bona fide* mortgagee, prior to the amendment of 1889, would be protected against any levy by attachment or execution, even though his mortgage was not of record.[1]

In the following cases it is held that an unrecorded deed or mortgage will have priority over the lien of an attachment, although the attaching creditor did not, at the time of the attachment levy, have any notice of the unrecorded deed or mortgage: *Holden* v. *Garrett*, 23 Kan. 98; *Northwestern Forwarding Co.* v. *Mahaffey, Slutz & Co.*, 36 Kan. 152 (12 Pac. 705); *Wilcoxson* v. *Miller*, 49 Cal. 193; *Davis* v. *Owenby*, 14 Mo. 170 (55 Am. Dec. 105); *Hope* v. *Blair*, 105 Mo. 85 (16 S. W. 595, 24 Am. St. Rep. 366); *Norton* v. *Williams*, 9 Iowa, 528; *Bell* v. *Evans*, 10 Iowa, 353; *Vaughn* v. *Schmalsle*, 10 Mont. 186 (25 Pac. 102, 10 L. R. A. 411); *Runyan* v. *McClellan*, 24 Ind. 165; *Wright* v. *Jones*, 105 Ind. 17 (4 N. E. 281); *Greenleaf* v. *Edes*, 2 Minn. 264; *Schroeder* v. *Gurney*, 73 N. Y. 430; *Harral* v. *Gray*, 10 Neb. 186 (4 N. W. 1040). In *Hackett* v. *Callender*, 32 Vt. 97, it is held that if an attaching creditor has notice after his attachment, but before execution levy, that the land does not belong to the execution debtor, though the record title is in the debtor,

---

[1] See *Luton* v. *Sharp*, 94 Mich. 203 (53 N. W. 1054), for a case arising subsequent to the amendment.

the equitable interest of the real owner will be pro-tected against the levy. This case would seem to dis-credit the earlier case of *Bigelow* v. *Topliff*, cited earlier in this opinion. See *Chapman* v. *Coats*, 26 Iowa, 288. .

The act in which section 9224, in relation to execution levies, is found, is entitled "An act relative to levies of executions on real estate." The amendment of 1889 does not refer to attachment levies, and does not purport to change its provisions. If, as was said in *Smith* v. *Williams*, *supra*, the courts cannot extend or add to the re-cording laws, we do not see how the attaching creditor obtained any greater interest in the property levied upon than was then owned by the attachment debtor. As this mortgage was put upon record after the attachment, and before the execution levy, we think Mr. Bane was a proper party to the foreclosure proceeding, and that his levy was subject to the mortgage debt. The decree will be reversed, as to him, with costs, and affirmed as to the other defend-ants.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., con-curred. LONG, J., did not sit.

