FIRST NATIONAL BANK OF DURAND *v.* PHILLPOTTS.

1. CONVEYANCES—EXECUTIONS—SALES—RIGHTS OF PURCHASER—PARTITION.

On a bill for the partition of certain real estate, complainant claimed title under a sheriff's deed based upon an execution, levy, and sale of property which the judgment debtor inherited from the estate of his father. The judgment debtor during the lifetime of the father had executed a certificate in the following form: "This is to certify that I have sold all my claim and heirship on my father's property, owned by him in the township of Pinconning, county of Bay, for the sum of ($2,000) two thousand dollars." After the judgment and after the execution and levy of complainant had been made and perfected, but before the sale, the judgment debtor quit-claimed to defendants. *Held,* that,. as complainant had no notice of the instrument above quoted, defendants would be presumed to have taken subject to complainant's rights, and its failure to file a bill within a year from the time of the levy would not bar its right to maintain a bill.

2. SAME — DEEDS — REQUISITES—STATUTE OF FRAUDS—EQUITABLE INTEREST.

The instrument above quoted is not a conveyance of land, as it contains no words of grant, no description of the property, and designates no grantee; at most, if not void under the statute of frauds, it is an inchoate agreement, enforceable in a court of equity, and would not affect the legal title.

3. Executions—Levy—Notice—Liens—Priority—Statutes.
    Under Act No. 227, Pub. Acts 1889, a notice of levy filed with
    the register of deeds is a claim upon the property sold upon
    execution from the time of such filing, and the lien thus ob-
    tained is valid against all grantees and mortgagees of whose
    claims the lienors shall not have actual or constructive no-
    tice.

Appeal from Bay; Collins, J. Submitted November
12, 1908. (Docket No. 84.) Decided January 4, 1909.

Bill by the First National Bank of Durand against Walter
Phillpotts and Mary Phillpotts for the partition of certain
real estate. Defendants filed an answer in the nature of
a cross-bill to set aside an execution, levy, and sale. From
a decree for defendants, complainant appeals. Reversed.

*A. H. McMillan,* for complainant.

*Charles W. Hitchcock,* for defendants.

Montgomery, J. This is a suit for partition of lands
between complainant and defendant Walter Phillpotts,
the defendant Mary Phillpotts being made a party because
of her dower interest in the lands in question as widow of
Harry Phillpotts. The lands consist of 320 acres in the
township of Pinconning, Bay county. The facts neces-
sary to an understanding of the case are these: The com-
plainant on the 6th of June, 1904, obtained a judgment
against Richard Phillpotts and others, and on the 25th of
March, 1905, complainant caused a levy to be made upon
the interest of Richard Phillpotts in and to the property
above described, the levy being duly recorded. Richard
Phillpotts was one of the two heirs at law of Harry Phill-
potts, the defendant Walter Phillpotts being the other
heir, and the defendant Mary Phillpotts the widow. On
the 4th of April, 1905, after the levy of complainant had
been made and perfected, Richard Phillpotts and wife
quitclaimed to the defendant Walter Phillpotts the
property above described, together with another 40 acres.

On the 29th of June, 1905, all the estate, right, title, and interest of Richard Phillpotts of which he was seised and possessed on the 25th of March, 1905, the date of the levy, in and to an undivided one-half of the premises in question, was sold at sheriff's sale, and bid in by complainant for $515.80. The sale appears to have been regular and the sheriff made a certificate of sale, which was duly recorded on the day of its date. In the meantime the estate of Harry Phillpotts, who died intestate, was probated, Fred W. Klumpp being appointed administrator. An inventory and appraisal was made, showing the total valuation of real estate and personal property to be $4,619. The administrator's final account was filed on the 12th of April, 1906, and on the same day an acknowledgment of service of notice of hearing of the final account was signed by Mary, Richard, and Walter Phillpotts, and also papers consenting to said account and to the assignment of the residue of said estate. The final account of the administrator was allowed, and an order was made reciting that there was proof on file that due notice of hearing of said petition had been given, and determining that Mary Phillpotts, widow, and Walter Phillpotts and Richard Phillpotts, children, of said deceased, were the sole heirs at law of said deceased. This order assigned one-third of the personal estate to Mary Phillpotts, one-third to Richard Phillpotts, and one-third to Walter Phillpotts, and assigned the residue of the real estate to the heirs at law of said deceased—to Richard Phillpotts an undivided one-half, to Walter Phillpotts an undivided one-half, and to Mary Phillpotts dower in the whole. A copy of this decree was recorded in the office of the register of deeds. On September 29, 1906, the sale of the property to the complainant became absolute, and on October 9, 1906, the sheriff made a deed of all the estate, right, title, and interest which said Richard Phillpotts had or possessed on the 25th day of March, 1905, in and to an undivided one-half of the land, etc. On November 7, 1906, complainant filed the bill in the present case, ask-

ing for partition, and that the dower of the widow be admeasured. The defendants filed an answer, in which they set up that on the 5th of April, 1904, Harry Phillpotts, the ancestor, paid to Richard Phillpotts the sum of $2,000 in consideration of his releasing to him all his interest in the estate of his father. The only written evidence of this alleged agreement is as follows:

"PINCONNING, April 5, 1904.

"This is to certify that I have sold all my claim and heirship on my father's property, owned by him in the township of Pinconning, county of Bay, for the sum of ($2,000) two thousand dollars.

"RICHARD PHILLPOTTS."

Complainant had no knowledge of this agreement or receipt previous to the commencement of the present suit. On the trial the proofs took a wide range, the complainant contending, among other things, that if such a transaction as that set up in the answer took place in 1904, it was colorable, and was a scheme to defraud the creditors of Richard Phillpotts, and was made during the pendency of the present suit. The court, however, found against complainant's contention upon this question, and while there is much in the record to cast doubt on the testimony of the witnesses for the defense, we find it unnecessary to negative the case asserted in the answer.

Really the case gets down to this: As between a claimant under the written instrument set up in defendant's answer and an execution creditor, which is entitled to precedence? The circuit judge determined the case in favor of defendants on the ground that the agreement of April 4, 1904, having been duly carried out, barred Richard Phillpotts from participating in his father's estate until set aside by some competent court; that the proceedings in the probate court did not affect the title of Walter Phillpotts derived through his father from Richard Phillpotts; and that, assuming that there was fraud in the transaction, yet as the complainant did not proceed to file its bill within one year from the date of the levy, it would be

barred from now maintaining a bill. We think the circuit court was in error. This is clearly not a case of a bill filed in aid of execution, nor is it a bill to reach equitable interests of Richard Phillpotts in the property. The bill proceeds upon the view that the complainant is the owner of the legal title to one-half of this property. It is or is not the owner of such legal title, as certain legal questions which we shall consider later on shall be determined. If it is the owner of the legal title, and if the levy was upon a legal interest, the conveyance subsequent to the levy by quitclaim deed by Richard Phillpotts to Walter Phillpotts would not compel a resort to equity to set aside that conveyance, as the title taken by Walter would be presumably subject to the complainant's levy. So far as the defendant's rights rest upon the undisclosed and secret transaction between Richard Phillpotts and his father in 1904, notice of which was not brought to complainant until after the time for filing a bill to set aside the transaction for fraud had expired, it is clear that complainant was under no obligation to resort to equity, indeed could not have done so, within the time fixed by statute, as he lacked the information. The instrument referred to and quoted above was clearly not an executed conveyance. Indeed in form it is not a contract at all, but a statement of fact. It is a certificate of what Richard Phillpotts had done. But it is wanting in many particulars as a grant or conveyance of land. It contains no words of grant; and, while on its face it relates to real estate, it describes no property and designates no grantee. Taking the most favorable view to the defendant, the most that can be said is that this instrument, supplemented by parol testimony, shows an incomplete inchoate agreement, and if the statute of frauds does not render it wholly void, it at most would create an equity enforceable in a court of equity, and would not affect the legal title to the estate, which vested in Richard Phillpotts at the death of his father. The duty is therefore cast upon the defendant to invoke the aid of a court of equity, rather than upon the present

complainant, as appears to have been assumed in the court below. But this equity would not, under our recording laws, take priority over the right acquired by the complainant by a levy upon the interests of Richard Phillpotts. That the recording laws inure to the benefit of a purchaser from the heir whose deed is duly recorded in accordance with the requirements of the statute appears to be established by the clear weight of authority. See Martindale on Conveyancing, §. 286, *Kennedy* v. *Northup*, 15 Ill. 148, and *Earle* v. *Fiske*, 103 Mass. 491.

It is said in the brief of defendant's counsel that complainant in this case was an execution purchaser, and was therefore not a bona fide purchaser for value, and not entitled to any notice. This is hardly an accurate statement of the law as it stood prior to the amendment of 1889. It is true that under the earlier decisions of the court, and before that amendment, a certificate of levy was held not to be notice to a subsequent purchaser. But this statute being Act No. 227, Pub. Acts 1889 (3 Comp. Laws, § 9224), amendatory of Act No. 5, Pub. Acts 1875, now provides for the filing of notice of levy with the register of deeds, and further provides that, upon said notice being filed, such levy shall be a lien thereon from the time when such notice shall be deposited. And the lien thus obtained shall from the filing of said notice be valid as against all grantees and mortgagees of whose claims the party interested shall not have actual or constructive notice. As was said in *First Nat. Bank of Cooperstown* v. *State Sav. Bank of Ionia*, 130 Mich. 332, this statute scarcely requires construction. The language could not be more plain or unambiguous. The purpose was to change the rule which had previously existed, and to give a levy under an execution the same priority accorded to a conveyance duly recorded. See, also, *Gardner* v. *Mason*, 130 Mich. 436, where the rule was again affirmed, and the case of *Campbell* v. *Keys*, 130 Mich. 127, which distinguishes between an execution levy and an attachment levy in this regard, pointing out that the attachment

statute has not been changed, as has been the statute with reference to execution levy. Upon this question the case cited by counsel for complainant (*Gary* v. *Newton*, 201 Ill. 170) is quite in point. The case was very similar to the present in other respects. A levy was there made upon real estate as the property of James Frederick Gary, one of the heirs of Thomas E. Gary. The other heirs of Thomas E. Gary asserted an agreement by which James Frederick Gary, for a consideration, had relinquished by parol his right to heirship in his father's estate. The court say of this agreement:

" If the oral agreement be considered as valid and binding, then he held the legal title to an undivided one-seventh of the property in trust for the benefit of his brothers and sisters, the other six heirs of Thomas E. Gary. The trust, upon which he thus held the title when the judgment liens were acquired, was a secret trust, undisclosed by anything upon the records, and of which the judgment creditors here concerned had no notice. Inasmuch as they had no notice, that secret trust cannot be enforced as against them. A bona fide purchaser of the legal estate —and the judgment creditors here are to be regarded as bona fide purchasers—will be protected against the prior equitable title of another, of which he had no notice; and, although an heir, holding the legal title to an interest in property by descent, may so hold it in trust for others, still a third person may acquire the title from him, if such third person has no notice of the trust, and acts in good faith. *Robbins* v. *Moore*, 129 Ill. 30. After the death of the original owner, the apparent legal title is in the heir; and the policy of the law, which is to make patent all legal titles to lands, so far as practicable, that strangers may safely purchase, equally requires that the bona fide purchaser from the heir should be protected. * * * If, therefore, the agreement set up in the bill in this case should be enforced, it would lead to the inequitable result of postponing the liens of the judgment creditors to a secret, unrecorded trust, of which they had no notice. A court of equity will not enforce such an agreement as that which is here under consideration, under the circumstances thus indicated."

It becomes unnecessary to determine as to the effect of the determination of the heirs or of the order for distribution of the estate by the probate court. For the reasons we have given, the complainant was vested with a title which is entitled to priority over that of Walter Phillpotts, and it follows that the decree must be reversed, with costs of both courts, and a proper reference made to determine whether partition is possible.

OSTRANDER, HOOKER, MOORE, and MCALVAY, JJ., concurred.