SCHMIDT *v.* STEINBACH.

SCHMIDT *v.* SCHENK.

1. FRAUDULENT CONVEYANCES—CONTRACTS—CONSIDERATION—TRUST.
   A contract to care for the mother of the grantor in a deed, undertaken and in part carried out by the promisor, was sufficient to support a conveyance from one brother to another of the interest of the former in his deceased father's estate, as against creditors of the transferror. It was not such an agreement as would create a trust or secret agreement that could be attacked by said creditors.

2. SAME—BILL TO QUIET TITLE—PARTIES.
   And the grantee was not entitled, until he had completed his contract, to assert his rights by the commencement of a suit to clear his title against creditors that had levied execution on the legal title of the debtor.

3. SAME—VENDOR AND PURCHASER.
   In such a case the legal title remained in the grantor subject to the contract right of the brother and was liable to execution sale.

4. SAME—NOTICE OF LEVY—STATUTES.
   The levy is by statute given priority over all prior grantees, mortgagees and others of whose claims the judgment creditor shall not have actual or constructive notice. And occupancy sufficiently puts the levying creditor on such notice. Act No. 227, Pub. Acts 1889, 3 Comp. Laws 1915, § 12898.

Appeal from Washtenaw; Kinne, J. Submitted October 9, 1916. (Docket Nos. 74, 75.) Decided December 21, 1916.

Separate bills by George A. Schmidt against Jacob Steinbach and William P. Schenk to remove clouds upon the title to land. From a decree dismissing the bills, complainant appeals. Affirmed.

*A. F. Freeman* (*B. M. Thompson,* of counsel), for complainant.

*Stivers & Kalmbach* (*Roscoe O. Bonisteel,* of counsel), for defendant Steinbach.

*Otto E. Haab,* for defendant Schenk.

STONE, C. J. These cases were heard and considered together, the evidence applying to both cases, in so far as applicable. The bills of complaint were filed to remove clouds upon the title of the plaintiff in and to the east half of the southeast quarter of section 16, in the township of Bridgewater, Washtenaw county.

It appears undisputed that, in 1876, George Schmidt, the father of the plaintiff, died intestate, owning the above-described premises, constituting his farm, and leaving a widow, a daughter, and his two sons, George A. Schmidt, who is the plaintiff in these cases, and his brother, Henry W. Schmidt, as his heirs at law. Administration was delayed for a time, and it was some 5 years after Mr. Schmidt's death when it was had, and, in 1885, the estate was closed and the property decreed by the probate court to the said three children, subject to the dower interest of the widow. It is the claim of the plaintiff that in 1892, about the time he became 21 years of age (his brother, Henry, being some 7 years older) the children and mother all met together at the farm, and it was then and there verbally agreed between Henry and the plaintiff that Henry should surrender and grant to the plaintiff all of his interest as heir at law of their father in said farm, upon the terms and conditions that the plaintiff should enter upon the farm, put it in proper condition, work the same (it being the claim of the plaintiff that it was then considerably dilapidated and run down), and take care of the mother and sister during their respective lives, and that he, the plaintiff, should have

Henry's interest in the farm. It is the further claim of the plaintiff that he agreed to this proposition, and entered into such agreement and upon the performance of the contract, and has ever since continued in possession of the farm and to care for his mother and sister, and that Henry has never since claimed any interest in the farm, but has practiced his profession of a physician at Chelsea, in said county, during all the years since 1892. The circuit judge, who heard and saw all of the witnesses in the cases (with the exception of one absent witness who made deposition), found that the parties named made an agreement such as is claimed by the plaintiff, and in the manner substantially as stated in the bills of complaint. It is undisputed that during all of the years that have intervened since 1892, the plaintiff has continued to possess, occupy, and operate the farm, and that he, with his mother and sister, have constituted the family; neither he nor his sister having ever married. The evidence is also undisputed that at the time of this claimed arrangement and agreement Henry was not indebted to any persons, and no part of the indebtedness which is hereafter mentioned had at that time accrued. It does appear, however, that a short time prior to the levy of the executions, which we shall later refer to, a judgment was obtained against Henry by defendant William P. Schenk for $300 and costs, and execution issuing thereupon was levied upon the premises on the 30th day of June, 1914, upon "the said right, title and interest of said Henry W. Schmidt in and to said lands (describing them), being estimated as a one-third interest"; also the sheriff filed a certificate of levy under said execution in the office of the register of deeds of said county upon the same day. It also appears that a judgment was obtained by the defendant Jacob Steinbach against Henry for $479.92 and costs, and execution issuing thereupon

was levied upon the same premises on the 15th day of July, 1914, the interest being described in the same manner, and a certificate of levy was duly filed with the register of deeds in that case. Upon learning that such levies had been made, the brother, Henry W., and his wife gave to the plaintiff a quitclaim deed of the premises, bearing date August 7, 1914, and the bills were filed in these cases August 15, 1914. The learned circuit judge, while he found that the parties named made an agreement such as is claimed by the plaintiff in the cases, was of the opinion that the cases were ruled and controlled by *First National Bank* v. *Phillpotts*, 155 Mich. 331 (119 N. W. 1), and he added:

"I am still of the opinion that the alleged surrender of the interest of the brother to the complainant, whether intentional or otherwise, operated as a secret trust, and as to the creditors of Henry W. Schmidt was fraudulent"

—and dismissed the bills of complaint. The plaintiff has appealed.

We have examined the *Phillpotts Case* with a great deal of care, and are of the opinion that it is not controlling in these cases. No question of possession entered into the consideration of the *Phillpotts Case.* Here it is undisputed that the plaintiff has, at all times since 1892, been in possession of the premises, and has been proceeding to carry out the contract made with his brother, and we have no doubt that, when that contract is fully performed by him, if it ever is, it will be in the power of a court of chancery to compel the specific performance of said agreement, thus taking the cases out of the statute of frauds.

It is equally true that the legal title of the undivided one-third part of said premises, subject to the widow's right of dower, is still in Henry, and that such legal title is subject to levy by execution. The plaintiff is at present in no condition to file a bill for specific

performance of said contract with Henry, because he has not fully performed the same. There cannot be specific performance at the present time because the period for performance has not yet arrived. But, in our opinion, he is entitled to protection under his contract, and any sale of the premises under the executions must necessarily be subject to the contract rights of the plaintiff. The distinction between the levy of attachments and of executions should be borne in mind. Our present statute (4 How. Stat. [2d ·Ed.] § 11386, 3 Comp. Laws 1915, § 12898), relating to the levy of executions, provides for the filing of a notice of levy with the register of deeds, and further provides that upon said notice being filed, such levy shall be a lien thereon from the time that such notice shall be deposited, and—

"the lien thus obtained, shall, from the filing of said notice, be valid against all prior grantees and [mortgagees] mortgages of whose claims the party interested shall not have actual nor constructive notice."

The purpose of the amendment of our statute in 1889 (Pub. Acts 1889, Act No. 227) was to change the rule which had previously existed, and to give a levy under an execution the same priority accorded to a conveyance duly recorded. *Campbell* v. *Keys,* 130 Mich. 127 (89 N. W. 720) ; *First National Bank* v. *State Savings Bank,* 130 Mich. 332 (89 N. W. 941) ; *Gardner* v. *Mason,* 130 Mich. 436 (90 N. W. 28).

Much stress is laid by plaintiff's counsel upon the fact that the plaintiff was in the actual possession of the lands in question at the time the levies of execution were made. Many cases are cited, including the following: *McKee* v. *Wilcox,* 11 Mich. 358 (83 Am. Dec. 743) ; *Woodward* v. *Clark,* 15 Mich. 104-112; *Converse* v. *Blumrich,* 14 Mich. 109-120 (90 Am. Dec. 230) ; *Russell* v. *Sweezey,* 22 Mich. 235-239; *Dunks*

v. *Fuller,* 32 Mich. 242; *Hommel* v. *Devinney,* 39 Mich.
522; *Seager* v. *Cooley,* 44 Mich. 14 (5 N. W. 1058);
*Michie* v. *Ellair,* 54 Mich. 518 (20 N. W. 564); *Weis-
berger* v. *Wisner,* 55 Mich. 246 (21 N. W. 331); *Ste-
vens* v. *Castel,* 63 Mich. 111-120 (29 N. W. 828);
*Schweiss* v. *Woodruff,* 73 Mich. 473-477 (41 N. W.
511); *Moore* v. *Township of Kenockee,* 75 Mich. 332-
341 (42 N. W. 944, 4 L. R. A. 555); *Lambert* v. *Weber,*
83 Mich. 395-404 (47 N. W. 251); *Corey* v. *Smalley,*
106 Mich. 257-260 (64 N. W. 13, 58 Am. St. Rep. 474);
*Brady* v. *Sloman,* 156 Mich. 423 (120 N. W. 795).
Most of the above-cited cases, while stating the gen-
eral doctrine, were not cases in which the party in
possession was a tenant in common.    The precise
question here is whether such possession by plaintiff,
a tenant in common, was notice of any more than his
record title, as shown by the proceedings in the pro-
bate court.

In the case of *Weisberger* v. *Wisner, supra,* the
question involved the rights of a tenant in common.
In that case Wisner, in addition to the deeds which
made him legal owner of an undivided three-fourths
of the premises involved, had a contract which was
perfectly legal and binding, and under which he was to
become entitled, when he made certain payments, to
a deed of the other one-fourth.    With the record in
that condition, Chief Justice COOLEY, in that case, said:

"If Wisner had held a deed of the remaining inter-
est in the land which then appeared to stand in Muzzy,
we see no reason why his possession should not have
been constructive notice of it. It is true, as complain-
ant says, that the possession was not apparently in-
consistent with the record title; but this may be said
in any case. It is possible that any possession may
be that of a licensee or otherwise subordinate to the
record title; and if that were sufficient reason for
holding that the possession is no notice of actual
rights, the principle on which decisions have been

made, giving protection to occupants, would have very limited application.

"If Wisner had held no deed of an interest in the land, but had been in possession under a contract of purchase, the possession would indisputably have been notice of his rights. Why it should be any less so when his title has been in part completed by conveyances is not apparent. The conveyances, one would think, ought to fortify and strengthen his equities, instead of weakening and putting them in danger. It seems to be unquestionable that Wisner occupied exclusively, and White would have learned this fact on inquiry. No reason is apparent why he should not have been held bound to inquire, as much in this case as in any other. See *Hardy* v. *Summers*, 10 Gill & J. (Md.) 316 (32 Am. Dec. 167), in which, upon similar facts, the possession was held to give notice."

This case was cited in *Corey* v. *Smalley*, *supra*. See, also, 27 Cyc. p. 1189 and 38 Cyc. p. 74, where it is said:

"It has been held that the possession of a cotenant is ordinarily notice to a purchaser of the whole interest that such cotenant may have in the estate," citing English cases.

We think that the weight of authority is in favor of the proposition that the actual possession or occupancy of land by a tenant in common is sufficient to put another upon inquiry, and that such other is chargeable with a knowledge of all the facts which he might have learned by making such inquiry of the party in possession. However, the plaintiff is not entitled to relief under his bills of complaint in any view of the subject, because the legal title to this land stood, at the time of the levies, in Henry, and such title was liable to levy upon execution, subject to the rights of the plaintiff who was in possession, but any sale of Henry's legal title must be held to be in subordination to the rights of the plaintiff under his contract in said land; and the rights of the plain-

tiff, so long as he continues to perform the contract, cannot be disturbed by the purchaser of the legal title standing in Henry's name.

Notwithstanding the quitclaim deed of Henry and wife to the plaintiff, made after the levies, the position and standing of the plaintiff in these suits, relating to Henry's interest in the farm, are no better than they were when the levies were made, and are the same as though Henry had deeded to the defendants at the time of the respective levies. Such deeds, had they been made, would have been subject to the plaintiff's equities, whatever they were.

The bills of complaint must therefore be dismissed, but without prejudice to the rights of the plaintiff to protect his possession and occupancy of the premises until such time as his equitable interest or title shall entitle him to specific performance of the said contract. The bills of complaint will therefore be dismissed, and the decrees below affirmed, with costs to the defendants.

KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. BIRD and PERSON, JJ., did not sit.