Matter of **PLYMOUTH GLASS COMPANY, a Michigan Corporation,**
**Bankrupt.**
**No. 38063.**

United States District Court
E. D. Michigan, S. D.
Oct. 29, 1957.

Walter I. McKenzie, Referee in Bankruptcy, Detroit, Mich., Fildew, DeGree,

Fleming & Gilbride, Detroit, Mich., for Pittsburgh Plate Glass Co.

W. Alex Kennedy, Detroit, Mich., for trustee.

PICARD, District Judge.

Petitions to review two rulings of the Referee in Bankruptcy, one denying petitioner, Pittsburgh Plate Glass Company, resort to State Court proceedings to foreclose an alleged equitable mortgage on certain real estate, and the other accepting and confirming an offer for sale of the same by Receiver, and claimed to be covered by said equitable mortgage.

### Findings of Fact

On December 29, 1953, bankrupt purchased real property located in Plymouth Township from Frank Arquillo on land contract providing for $5,000 down and balance in monthly installments of $250 commencing February 1, 1954. The contract was not recorded and bankrupt was in possession of the property from the date of execution thereof to commencement of bankruptcy proceedings, March 24, 1956.

September 15, 1954, the bankrupt was indebted to the petitioner in the amount of $10,861.95. At that time petitioner, upon bankrupt's request, agreed to extend additional credit to a total maximum of $12,000, in consideration of which the bankrupt agreed to, and did, execute an assignment of its interest in the land contract to petitioner. That assignment has never been recorded.

On May 24, 1956, the Referee entered an Order of Adjudication and on June 25, 1956, the receiver filed an inventory and appraisal of bankrupt's property which showed the value of the real estate involved herein as $40,000. All creditors, including petitioner, were notified that there would be a public sale of the bankrupt's assets at ten o'clock in the forenoon and hearing on the confirmation of the sale at three o'clock in the afternoon, both on July 19, 1956. The public sale was held on the date and time indicated and $29,000 was the best bid made for the real estate at that time, but at the

hearing on confirmation, the Referee refused to confirm the sale in face of Pittsburgh's objections that the offer was inadequate.

In the meantime, July 16, 1956, petitioner claimed that its assignment from bankrupt of its vendee's interest amounted to an equitable mortgage and on that date petitioned the Referee for authority to foreclose the same in the State Court. On July 19, 1956, the matter came on for hearing and was marked heard and submitted with briefs to be filed. November 2, 1956, the Referee filed an opinion holding that since a lien could have been obtained by a creditor of the bankrupt under the Michigan law the Trustee, under Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, had the right to avoid Pittsburgh's alleged equitable mortgage and make it unenforcible in the State Court. The order denied petitioner's request for permission to foreclose in State Court.

On the same day, November 2, 1956, the Trustee received an offer of $32,500 for the real estate in question and notice was given to petitioner and other creditors that a hearing on that offer would be held on November 15, 1956. The hearing was held and Pittsburgh again objected to acceptance and confirmation, again on the ground that the offer was inadequate. Although requested to do so by the Referee, the petitioner failed to produce any evidence that a higher offer had, or would be made, whereupon the Referee, after seeking higher offers in open court, confirmed the sale and instructed the Trustee to execute proper instruments of conveyances to the $32,500 offeree.

Still Pittsburgh Plate Glass Company maintains that the Referee erred when he entered orders confirming and accepting the offer of $32,500 for the real estate of the bankrupt, and denying its petition for authority to foreclose.

## Conclusions of Law

(a) *As to the Confirmation of the Sale*

The transcript of testimony taken at the confirmation hearing on November 15, 1956, reveals that the Referee was at pains to assure himself that the best possible price was being received for the bankrupt's estate, as note, statement of counsel for the Trustee found at page 4 of the transcript of the November 15, 1956, hearing—

"Mr. Neeback, of Whitman Company, has tried to get better offers and there haven't been any. The receiver has tried and there haven't been any. The Trustee has tried and there haven't been any better offers. This is the best offer we can obtain."

In addition to the above, the Referee had delayed the sale for approximately four months to-wit: from July 19, 1956, to November 15, 1956, during which time the petitioner as well as the Trustee had adequate opportunity to secure higher bids if the same could be obtained. We fail to see how the Referee could have taken any further steps to protect the rights of creditors.

 Furthermore, mere inadequacy of price is not a ground for setting aside a public sale of a bankrupt's property. The inadequacy must be gross and there is no testimony to sustain any such contention. Matters such as "confirmation of sale" and "compromise of claims against bankrupt's estate" are matters addressed to the discretion of the Referee, and he will not be reversed except for clear abuse of discretion. Jacobsohn v. Larkey, 3 Cir., 245 F. 538, L.R.A. 1918C, 1176. See also In re S. F. Brothers Co., D.C., 151 F.Supp. 153.

 In view of the foregoing, we hold that the Referee committed no error and accordingly the order of confirmation is affirmed.

(b) *Denial of Petition to Foreclose by State Action*

Section 70, sub. c of the Bankruptcy Act provides inter alia, that

"The trustee, as to all property, whether or not coming into possession of control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date

of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

Thus under the above quoted section of the Bankruptcy Act, this court must—

(a) examine the law of Michigan in light of the facts in this case, and determine whether or not at the date of bankruptcy, a creditor of the bankrupt could have obtained a lien on the realty in question; if so, then,

(b) conclusively presume that a creditor did obtain a lien;

(c) place the Trustee in his stead; and

(d) determine the priority of the respective claims according to Michigan law. Constance v. Harvey, 2 Cir., 215 F.2d 571, at page 575; also Conti v. Volper, 2 Cir., 229 F.2d 317.

True, the bankrupt, Plymouth Glass Company, at the date of bankruptcy held a vendee's interest under a land contract in the realty in question and, under Michigan law, it was the owner of an interest in real property—not personalty. See Hull v. Hostettler, 224 Mich. 365, at page 368, 194 N.W. 996, at page 997.

█ The statutory law of this State, M.S.A. § 27.1581, Comp.Laws 1948, § 623.82, provides inter alia that—

"All the real estate of any debtor, * * * shall be subject to the payment of his debts, liabilities and obligations, and may be levied and sold on execution as hereinafter provided. * * *"

and M.S.A. § 27.1582, Comp.Laws 1948, § 623.83, provides that liens upon realty may be perfected by depositing notice of levy thereon with the Register of Deeds in the county where the land is located. Thus, unless petitioner's unrecorded assignment of the bankrupt's interest on the date of bankruptcy was a bar, it was possible for a creditor to have perfected a lien on the property at that time. An examination of Michigan cases clearly establishes that

this equitable mortgage did not bar the perfection of a lien. See Gardner v. Mason, 130 Mich. 436, at page 438, 90 N.W. 28, at page 29, where the Supreme Court of Michigan held that levies are prior claims over unrecorded instruments of real estate conveyances.

Therefore, since the Trustee, pursuant to Section 70, sub. c of the Bankruptcy Act, became vested with the rights and remedies of a creditor (even though such a creditor does not exist) all that remains to be decided is the question of priority of rights between such a creditor (the Trustee in the case at bar), and the petitioner, Pittsburgh Plate Glass Company. This precise question was settled by Michigan's Supreme Court in the cases of Gardner v. Mason, supra and Schmidt v. Steinbach, 193 Mich. 640, 160 N.W. 448. In both instances the court held that where the levying creditor does not have actual or constructive notice of the rights of the holder of the unrecorded instrument, the right of the former takes precedence over that of the latter.

█ In view of the language of In re Cobb, D.C., 14 F.Supp. 465, at page 467, to the effect that neither the possession of the bankrupt, nor reference to the unrecorded instrument of security in the schedules amounted to constructive notice to the Trustee, we are constrained to hold that the Trustee was not put on notice of petitioner's unrecorded assignment.

As stated in Constance v. Harvey, supra [215 F.2d 575], where a creditor without notice of the petitioner's unrecorded assignment could have obtained a lien at the time of bankruptcy, the Trustee under Section 70, sub. c is entitled to the rights and remedies of such

"an 'ideal' hypothetical creditor".

This being true in the case now before us, we hold that the Trustee must prevail.

Petitioner has raised several other questions in its brief and petitions for review. For example, it is contended that it was a pledgee, and not a mort-

654

gagee—that the Trustee is required to resort to plenary proceedings and follow the procedure outlined in M.S.A. § 27.-1581 etc., Comp.Laws 1948, § 623.82 et seq. We deem it unnecessary to dwell upon these issues and similar ones raised by petitioner. Suffice to say that insofar as their determination is significant to a disposition of this matter, we adopt the rulings of the Referee on this issue as set forth in his opinion.

Referee confirmed.