*In re* SIMON'S ESTATE.

APPEAL OF SIMON.

1. ESTATES OF DECEDENTS—ADVANCEMENTS—CONTRACTS—RELEASE.
   . The probate court is authorized by statute to determine all
   questions of advancement made by a deceased to his heirs or
   distributees.

2. SAME.
   An heir may by contract agree not to claim a share in the
   estate of his ancestor, and is thereby estopped from claiming
   any share of the estate.

Case made from Kent; Perkins, J. Submitted June
21, 1909. (Docket No. 69.) Decided September 21,
1909.

Petition by Mathias Simon to share in the distribution
of the estate of Joseph Simon, deceased. The petition
was denied in the probate court, and petitioner appealed
to the circuit court. A judgment affirming the order of
the probate court is reviewed by petitioner on a case made.
Affirmed.

*Rodgers & Rodgers,* for appellant.

*Lombard & Hext* and *Thompson & Temple,* for appellee.

On June 29, 1874, the day that Mathias Simon was 21
years old, his father, Joseph Simon, paid to him $1,000,
and Mathias executed and delivered to his father a writing
here set out:

"BYRON, KENT COUNTY, MICHIGAN, June 29th, 1874.

"I, Mathias Simon, of Jamestown, Ottawa county
and State of Michigan, do hereby acknowledge to have
received of my father, Joseph Simon, of Byron, Kent
county, Michigan, the sum of one thousand dollars, which

sum is paid to and received by me under the following agreement and understanding, that my father has advanced the same to me in full for my distributive share out of his estate whatever the same may be at his decease. And for and in consideration of said sum to me so paid and received as aforesaid, I hereby agree that neither myself nor my heirs will take, claim or receive anything further out of the estate of the said Joseph Simon at or after his decease. This paper shall be a receipt in full in the hands of the administrator, executor or legal representative of the estate of the said Joseph Simon after his decease, for my right share and interest as an heir of said Joseph Simon, and shall forever cut off any claim of heirship by me or my heirs forever.

" MATHIAS SIMON.

" Witness, JAMES MILLER."

Joseph Simon died February 26, 1906, intestate, and there survived him his wife and four children, of whom Mathias was one. His real estate was valued at $8,000 and his personal estate at $15,544.39. Disbursements and commissions were $3,455.03. Mathias in the probate court asked that the value of the personal estate be increased by the sum of $1,000 " advanced to me on, to wit, the 29th day of June, A. D. 1874, by my said father, Joseph Simon," and that in the distribution of the estate he be given a one-fourth interest in the real and personal property, subject to the interest or share of the widow.

"In other words, I ask that in the division and distribution of the personal estate left by the said deceased that I be given such an amount which, added to the advancement already received by me as aforesaid, will give me my full share of said personal estate."

In the probate court and in the circuit court, to which an appeal was taken, it was determined that Mathias was not entitled to any share of the estate. It was found by the circuit court that the value of the estate of Joseph Simon at the time of his death was substantially three times its value at the date of making the said advancement. The provisions of our statute (3 Comp. Laws,

158 MICH.—17.

§§ 9069–9074) upon the subject of advancements here set out are to be found also in the Rev. Stat. 1838, pt. 2, tit. 2, chap. 1.

"(9069) SEC. 6. Any estate, real or personal, that may have been given by the intestate in his lifetime, as an advancement to any child or other lineal descendant, shall be considered as a part of the estate of the intestate, so far as it regards the division and distribution thereof among his issue, and shall be taken by such child or other descendant towards his share of the estate of the intestate.

"(9070) SEC. 7. If the amount of such advancement shall exceed the share of the heir so advanced, he shall be excluded from any further portion, in the division and distribution of the estate, but he shall not be required to refund any part of such advancement, and if the amount so received shall be less than his share, he shall be entitled to as much more as will give him his full share of the estate of the deceased.

"(9071) SEC. 8. If such advancement be made in real estate, the value thereof shall, for the purposes mentioned in the preceding section, be considered a part of the real estate to be divided; and if it be in personal estate, it shall be considered as part of the personal estate; and if in either case it shall exceed the share of real or of personal estate, respectively, that would have come to the heir so advanced, he shall not refund any part of it, but shall receive so much less out of the other part of the estate as will make his whole share equal to those of the other heirs who are in the same degree with him.

"(9072) SEC. 9. All gifts and grants shall be deemed to have been made in advancement, if they are expressed in the gift or grant to be so made, or if charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other descendant.

"(9073) SEC. 10. If the value of the estate so advanced shall be expressed in the conveyance, or in the charge thereof made by the intestate, or in the acknowledgment of the party receiving it, it shall be considered as of that value, in the division and distribution of the estate; otherwise, it shall be estimated according to its value when given, as nearly as the same can be ascertained.

"(9074) SEC. 11. If any child or other lineal descendant so advanced shall die before the intestate, leaving issue, the advancement shall be taken into consideration, in

the division and distribution of the estate, and the amount thereof shall be allowed accordingly by the representatives of the heir so advanced, in like manner as if the advancement had been made directly to them."

OSTRANDER, J. (*after stating the facts*).   This court has never decided, and it seems has not before had presented for decision, the precise question which is involved. It is claimed that upon the authority of *First Nat. Bank of Durand* v. *Phillpotts*, 155 Mich. 331 (119 N. W. 1), it must be held that the instrument executed by Mathias is ineffectual to bar his right to a share of the real estate. But in that case it did not appear that the alleged advancement was asserted in probate court, which court is expressly authorized (3 Comp. Laws, § 9457) to determine all questions as to advancements made or alleged to have been made by the deceased.   The estate was assigned to the heirs as if no advancement had been made.   The order assigning the real estate was recorded.   The effect of an assignment of the real estate made in recognition of the advancement upon a levy made upon the interest of an heir before the estate was assigned is not discussed in the opinion.   The legal effect of the instrument executed by one of the heirs and claimed to evidence an advancement to him in full of his share of the estate is somewhat discussed, but there is nothing said which may be considered as decisive of the point presented in the case at bar.

The property of one dying intestate goes, by operation of positive law, by distribution, or by inheritance, to certain persons in certain shares.   The devolution of the property is independent of the wishes or the actions of the persons appointed by law to take it.   The provisions of the statute concerning advancements are a part of the law governing the devolution of such estates.   Until the death of the ancestor the heir as heir or as distributee has no interest in the estate.   And it was the rule of the common law that a release by a child of an interest in the estate of his parent, if made during the life of the parent, was inop-

erative, because all interest in the estate was then in the parent.

I have here stated, in substance, the grounds of the argument made in behalf of the appellant, in which it is contended that the statute furnishes the exclusive and unavoidable rule for the devolution of intestate estates, as well where advancements have been made as where they have not been made. It must be conceded there is some reason and very respectable authority to support this contention. At first blush, it seems a simple enough matter to say that the statutes of descent and distribution are framed so as to secure equality of interest of those entitled to an intestate property that the owner may, if he chooses, change the statute devolution by his will, but not otherwise, and that if he makes a gift and characterizes it as an advancement, and dies intestate, it must, by virtue of mandatory provisions of the law, and no matter upon what terms the advancement is made, be considered as a payment *pro tanto* of the share of the child advanced. But such a rule appears less reasonable when it is considered that advancements are not necessarily enforced according to a theory of partial or total non-devolution of the estate to the person advanced. The legislative conception of the matter seems rather to have been that they would be enforced as a present payment for that which might otherwise later belong to the heir. The estate actually belonging to the intestate at the time of his death is enlarged by the advancement theretofore made. It is the actual estate, plus the advancement, which is regarded. And, as an advancement is considered to have been a portion of the patrimony already distributed or assigned, the theory of administration in such cases is one of set-off and adjustment rather than one of avoidance either of the statute of descents or of distribution. To the suggestion that a considerable inequality of interest may be, in fact, the result of accepting an advancement as in full for the statute share, it may be well replied that in most cases it will be uncertain whether any advance-

ment will not result in inequality. The ancestor, after advancing a child or children, may accumulate or may lose property. Other children may be born. The statute does not expressly forbid one to receive in advance his full share of the estate and to acknowledge it as such. If he does so receive it, it is his promise or agreement or covenant, and not the mere voluntary act of the ancestor, which creates the bar. And if it is conceded, as upon both reason and the weight of authority it must be, that in the absence of the statute provisions concerning advancements the heir may, the ancestor living, bar his right to a share in his estate, not indeed by a present release or conveyance, but by a contract or covenant not to claim the interest when, if ever, it has vested, then the statute provisions must be construed with reference to such a right.

It seems to have been the rule of the common law that, if an heir released with warranty, it barred him when the right descended. 2 Coke upon Littleton, p. 265*a*. To this effect are many decisions of the courts, some of which will be later referred to. No particular form of words is required to constitute such a covenant, and it is no longer important that any particular ceremony accompany or evidence the making of such a covenant. The precise question involved has been many times decided, though not always in the same way. It is unnecessary to cite the large number of authorities which have been examined. They are well collected in *McCall* v. *Hampton*, 33 L. R. A. 266, 278 (98 Ky. 166, 32 S. W. 406), note, and in *Headrick* v. *McDowell*, 65 L. R. A. 578 (102 Va. 124, 45 S. E. 804), note. The subject of advancements is treated in 1 Am. & Eng. Enc. Law (2d Ed.), p. 760, and in 14 Cyc. p. 162.

The weight of authority recognizes the right of the heir who has attained majority to accept presently in advancement his full share of the estate of the parent. Whether the arrangement is called a contract not to take, or a release to take effect in the future, the principle is the same.

When the estate is cast by the death of the ancestor, it operates to estop the heir to take what he has agreed he will not claim. A leading case in which the rule is announced is *Quarles* v. *Quarles*, 4 Mass. 680. The statute in force in Massachusetts when this decision was rendered (1808) was substantially the statute, originally adopted from that State, now in force in this State. In Illinois, where a similar statute is in force, the same rule is adopted. *Simpson* v. *Simpson*, 114 Ill. 603 (4 N. E. 137, 7 N. E. 287). See, also, *Jones* v. *Jones*, 46 Iowa, 466; *Trull* v. *Eastman*, 3 Metc. (Mass.) 121 (37 Am. Dec. 126); *Coffman* v. *Coffman*, 41 W. Va. 8 (23 S. E. 523); *Curtis* v. *Curtis*, 40 Me. 24 (63 Am. Dec. 651); *Power's Appeal*, 63 Pa. 443; *In re Lewis' Estate*, 29 Ont. 609.

We are satisfied that it is the better rule, and that the court below was not in error in adopting it. Nor do we need to consider whether such an undertaking may be given effect in courts of law. It has been pointed out that probate courts, which in the settlement of estates proceed largely according to equitable theories of rights, are expressly authorized to determine all questions concerning advancements. In this case the receipt given by Mathias to his father is, as he agreed it should be, produced on the part of the estate to estop him from asserting any right to share therein. There is no reason why the probate court should not have determined, as it did, its legal effect.

The judgment is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.