The **INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Petitioner-Appellant,**

v.

**ESTATE OF Huram PARKER, Respondent-Appellee.**

No. 3–385A66.

Court of Appeals of Indiana, Third District.

Dec. 12, 1985.

---

Linley E. Pearson, Atty. Gen., Jeffery S. Dorman, Deputy Atty. Gen., Indianapolis, for petitioner-appellant.

Alvin T. Rockhill, Jay A. Rigdon, Rockhill, Pinnick, Pequinot, Helm & Landis, Warsaw, for respondent-appellee.

GARRARD, Judge.

When C. Huram Parker died on September 12, 1983 he left a number of certificates of deposit issued by Lake City Bank in the names of himself, his wife Ruby, and his daughter, Margaret Hopkins as joint tenants with right of survivorship. Subsequently, Margaret Hopkins executed a disclaimer of any interest in the jointly held certificates.[1] *See* IC 32–3–2–5.

The Inheritance Tax Division eventually petitioned for a redetermination of the amount of Indiana inheritance tax due in the estate on the basis that the purported disclaimer was ineffective. After hearing, the trial court confirmed its original order. This appeal followed.

The state presents two issues on appeal. First, it points out that shortly after her father's death Margaret Hopkins executed an application for consent to transfer as contemplated by IC 6–4.1–8–4.[2] The state

---

1. It is undisputed that the disclaimer was executed within the nine month period provided by the statute.

2. "6–4.1–8–4. Transfer of personal property in possession of another or held jointly by a resi-

dent decedent and another.—(a) A person who has possession of or control over personal property held jointly by a resident decedent and another person may not transfer the property to the surviving joint tenant, unless:

asserts this constituted an "acceptance" of her survivorship interest and therefore barred her later attempt to disclaim. *See* IC 32-3-2-11.

Secondly, the state argues that the bank was not a proper party to receive the disclaimer pursuant to IC 32-3-2-7 and for that reason it was ineffective.

It has long been recognized that a person cannot be forced to accept property against his will and that, accordingly, a transfer of title is not complete until it is accepted by the recipient. *See, e.g., Jewett v. Commissioner* (1982), 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170.

Effective July 1, 1983 Indiana adopted comprehensive legislation to govern the disclaimer of property interests in all situations and clarify and correct inadequacies in the common law rule. IC 32-3-2-1 to 15.

IC 32-3-2-5 applies to joint tenancy interests. It provides:

"(a) For purposes of this section, 'joint tenancy' means any interest with the right of survivorship and includes a:

(1) tenancy by the entireties;

(2) multiparty account, as defined in IC 32-4-1.5-1(5), with the right of survivorship; and

(3) joint interest of spouses under IC 32-4-1.5-15.

(b) A disclaimer of an interest in a joint tenancy created by any means, including an intestacy, a testamentary instrument, or the exercise of a power of appointment by a testamentary instrument, is effective only:

(1) to the extent that the disclaimant did not furnish the consideration for the interest; and

(2) if the requirements of section 7 of this chapter are accomplished not later than nine (9) months after the event by which the final taker of the entire interest is ascertained.

In absence of clear and convincing evidence to the contrary, it is presumed that the disclaimant did not furnish any consideration for an interest.

(c) If no provision has been made for another devolution, an interest disclaimed under this section devolves as if the disclaimant had died immediately before the creation of the interest. A disclaimer under this section relates back for all purposes that relate to the interest disclaimed to the time immediately before the creation of the interest."

In addition, IC 32-3-2-7(a) provides that a disclaimer under Section 5 is effective:

"... only if it is delivered in person or mailed by first class United States mail either to the transferor of the interest or his personal representative, or to the holder of the legal title to the property to which the interest relates."

IC 32-3-2-11 adds: [3]

"The right to disclaim an interest or a benefit under an interest is barred by an acceptance of the interest or benefit, to the extent that the interest or benefit is accepted."

(1) The surviving joint tenant is the decedent's surviving spouse; or

(2) The property is money held in a joint checking account; without the written consent of the department of state revenue or the county assessor of the county in which the resident decedent was domiciled at the time of his death.

(b) A person who has possession of or control over a resident decedent's personal property (except proceeds payable under a life insurance policy) may not transfer the property to any other person, unless:

(1) The other person is the decedent's surviving spouse; or

(2) The property is money held in a checking account; without the written consent of the department of state revenue or the county asses-

sor of the county in which the resident decedent was domiciled at the time of his death.

(c) The department of state revenue or the appropriate county assessor may consent to a transfer if the department or the county assessor believes that the transfer will not jeopardize the collection of inheritance tax.

(d) The department of state revenue shall send a copy of any consent to transfer that it issues under this section to the county assessor of the county in which the resident decedent was domiciled at the time of his death."

3. Additionally, IC 32-3-2-10 bars the right to disclaim after any assignment, conveyance, encumbrance, pledge or transfer of the interest.

■■■ We turn then to the case in issue. The state argues that because Mrs. Hopkins executed an Application for Consent to Transfer as contemplated by IC 6–4.1–8–4, her right to disclaim was lost. In examining this contention it is important to note what is *not* in the record before us. Apart from the application there is no evidence or contention that Margaret Hopkins demanded or received any of the principal or interest on the certificates in question, or that she made any effort to assign, convey, encumber, etc. the certificates or her interest therein. The question is purely the effect of the application and ensuing consent to transfer.

IC 6–4.1–8–1 et seq. imposes a lien upon the property "transferred" by a decedent to secure the payment of inheritance taxes due the state. The chapter generally imposes a prohibition against delivering such property to the transferee unless the inheritance tax thereon has been paid, and provides that someone who violates the prohibition shall be personally liable for the tax plus a penalty of up to $1000.

IC 6–4.1–8–4(a) governs personal property held jointly by a decedent and others. It provides:

"A person who has possession of or control over personal property held jointly by a resident decedent and another person may not transfer the property to the surviving joint tenant, unless:

(1) the surviving joint tenant is the decedent's surviving spouse; or

(2) the property is money held in a joint checking account;

without the written consent of the department of state revenur or the county assessor of the county in which the resident decedent was domiciled at the time of his death."

Subparagraph (c) then provides that the department of state revenue or the appropriate county assessor may consent to a transfer if they believe the transfer will not jeopardize the collection of the inheritance tax.

The regulations promulgated by the department prescribe a form of application to secure the statutory consent and 45 IAC 4–2–7 permits the execution of such an application by a surviving joint owner or any other person having sufficient knowledge of the facts. The prescribed form which was executed by Mrs. Hopkins and Mrs. Parker simply contains their agreement to pay "any Indiana transfer taxes that may be imposed due to the demise of the decedent."

We agree with the trial court that the purpose of the statute is to provide assurance that inheritance taxes will be paid. The effect of the consent provision is to shift liability for payment of the tax and penalty from the person who has possession of or control over it. By its plain terms the statute does not, itself, purport to effect a transfer.

The state argues that, even so, with the bar removed the bank could have transferred or reissued the certificates, and we should therefore treat it as having done so. Alternatively, it argues that by virtue of IC 32–4–1.5–4 and IC 32–4–1.5–6 [4] a transfer

**4.** "32–4–1.5–4. Rights of survivorship.—(a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. If there are two [2] or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interests under section 3 [32–4–1.5–3] augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

(b) If the account is a P.O.D. account, on death of the original payee or of the survivor of two [2] or more original payees, any sums remaining on deposit belong to the P.O.D. payee or payees if surviving, or the survivor of them if one or more die before the original payee; if two [2] or more P.O.D. payees survive, there is no right of survivorship in event of death of a P.O.D. payee thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them.

(c) If the account is a trust account, on death of the trustee or the survivor of two [2] or more trustees, any sums remaining on deposit belong to the person or persons named as beneficiaries,

occurred when the joint certificates were created.

We disagree. Although the certificates might have been transferred, etc., in point of fact this was not done.

■ The official comment to the Uniform Probate Code following IC 32–4–1.5–6 states the purpose in classifying these transactions as non testamentary is:

"... to bolster the explicit statement that their validity ... is not to be determined by the requirements for wills."

On the other hand, the subsequently enacted IC 32–3–2–5, providing the right to disclaim, clearly rejects the notion of a transfer upon *creation* of the joint tenancy by providing that the nine month limitation period runs "after the event by which the final taker of the entire interest is ascertained."

The trial court correctly concluded that there was no bar to making a disclaimer.

■ The state then argues that even if Mrs. Hopkins was not precluded from disclaiming, she gave her disclaimer to the wrong party and the disclaimer was therefore ineffective.

IC 32–3–2–7(a) requires that to be effective the disclaimer must be delivered to the transferor of the interest or his personal representative, or to the holder of the legal title to the property to which the interest relates.

We find that the bank was a proper recipient of the disclaimer. It is clear under the law that the certificates of deposit created a debtor-creditor relationship between the bank and the parties named. The money deposited became the bank's property. *Citizen's Nat. Bank of Whitley Co. v. Mid-States Development Co., Inc.* (1978), 177 Ind.App. 548, 380 N.E.2d 1243, 3 A.L.R.4th 987; *Barger v. Stults* (1930), 92 Ind.App. 87, 172 N.E. 549.

■ As such, the bank should properly be considered the holder of legal title to the property to which Mrs. Hopkins' interest related. The practical consequence of this interpretation is that the disclaimer is thus given to the party who has the right and power to pay the principal and/or the interest on the debt or reissue the obligation in some new form. Thus, the bank is also the party to whom the disclaimer ought to be given.

There was no error.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

if surviving, or to the survivor of them if one or more die before the trustee, unless there is clear and convincing evidence of a contrary intent; if two [2] or more beneficiaries survive, there is no right of survivorship in event of death of any beneficiary thereafter unless the terms of the account or deposit agreement expressly provide for survivorship between them.

(d) In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of his estate.

(e) A right of survivorship arising from the express terms of the account or under this section, a beneficiary designation in a trust account, or a P.O.D. payee designation, cannot be changed by will.

32–4–1.5–6. Effectiveness of transfer based on account contracts involved.—Any transfers resulting from the application of section 4 [32–4–1.5–4] are effective by reason of the account contracts involved and this chapter and are not to be considered as testamentary or subject to IC title 29 [29–1–1–1—29–2–18–2]."