NATIONAL CITY BANK OF EVANS-VILLE, Plaintiff–Appellant,

v.

John OLDHAM, Eastern Indemnity Company of Maryland, Lewis A. Volpe, Treasurer of Vanderburgh County, Indiana, Board of County Commissioners Vanderburgh County, Indiana, Judgment Defendant Appellees,

Estate of Hubert D. Oldham, Garnishee Defendant Appellee.

No. 82A01–8811–CV–361.

Court of Appeals of Indiana, First District.

May 9, 1989.

Marilyn R. Ratliff, Kahn, Dees, Donovan & Kahn, Evansville, for plaintiff-appellant.

John J. Jewell, Trimble & Jewell, Evansville, for appellees.

## STATEMENT OF THE CASE

NEAL, Judge.

Plaintiff-appellant, National City Bank of Evansville (the Bank), appeals the decision of the Vanderburgh Circuit Court denying its motion for proceedings supplemental wherein it sought to satisfy a judgment it held against defendant-appellee, John S. Oldham (Oldham), from the assets of the garnishee defendant-appellee, Estate of Hubert D. Oldham (the Estate).

We affirm.

## STATEMENT OF THE FACTS

The Bank instituted foreclosure proceedings against Oldham and on December 20, 1983, obtained a judgment against him in the amount of $248,043.87 plus interest and costs. On March 5, 1984, the property that was the subject of the foreclosure action was sold at a sheriff's sale for $165,000, leaving a deficiency judgment against Oldham in the amount of $94,465.73.

On October 18, 1987, Oldham's father died and his will was duly admitted to probate on October 23, 1987. The will left a large portion of the Estate to Oldham including certain residential real estate located in Evansville, Indiana. On January 22, 1988, the Bank, in order to satisfy the deficiency judgment, filed a motion for proceedings supplemental, naming the Estate as garnishee defendant. Thereafter, on March 9, 1988, Oldham filed in the probate proceedings a disclaimer pursuant to IND. CODE 32-3-2-3, wholly and entirely disclaiming the property and interests in property which devolved to him from the estate. On April 20, 1988, Oldham executed and filed an amended disclaimer correcting a clerical error contained in the prior disclaimer.

By agreement, the Bank's motion for proceedings supplemental was submitted to the trial court upon the stipulated facts and briefs of the parties and a hearing was conducted thereon on August 18, 1988. Subsequently, the trial court denied the Bank's motion, determining that it was not

entitled to execute upon any of the assets of the Estate by virtue of Oldham's valid and effective disclaimer disclaiming any interest he may have had therein. The Bank appeals this decision.

## ISSUES

The Bank raises the following issues for our review:

I. Whether the trial court erred in failing to find that there did not exist an encumbrance within the meaning of IND.CODE 32-3-2-10 barring Oldham's statutory right to disclaim.

II. Whether the trial court erred in failing to find that there did not exist an acceptance of an interest or benefit within the meaning of IND.CODE 32-3-2-11 barring Oldham's statutory right to disclaim.

III. Whether the trial court applied the various provisions of the disclaimer statute in an unconstitutional manner.

## DISCUSSION AND DECISION

ISSUE I: *Encumbrance*

The Bank points out that it acquired a lien against Oldham's real property when it duly entered and indexed in the Vanderburgh County judgment docket the judgment it previously obtained against Oldham on December 20, 1983. *See* IND.CODE 34-1-45-2. It also points out that title to a decedent's personal and real property, whether he died testate or intestate, passes immediately by operation of law to the devisee or heir. The Bank first argues that by virtue of its previously recorded judgment lien, it acquired a lien against any assets of the estate in which Oldham had an interest at the moment the decedent died. It argues further that because the lien attached prior to the time Oldham executed the disclaimer, he was thereafter barred from attempting to do so.

It is true that the real and personal property of a decedent passes immediately upon his death to the person to whom it is devised by will or to the person who succeeds to the estate as his heir subject to certain circumstances not relevant here. *See* IND. CODE 29-1-7-23. It is also true that the interests of an heir or devisee in the decedent's estate may be taken by his creditors for the payment of his debts. *See* 10 I.L.E. *Descent & Distribution* § 78 (1983). A judgment creditor of a decedent's heir or devisee, however, has no greater rights in the decedent's property than the heir or devisee. If the title of an heir or devisee is divested so also are the rights of his creditor.

IND.CODE 32-3-2-1 to -15 provides a scheme whereby a person to whom an interest devolves by whatever means may divest himself of all or a portion of an interest by disclaiming it in whole or in part. In this regard, IND.CODE 32-3-2-2 provides:

A person to whom an interest devolves by whatever means may disclaim the interest in whole or in part as provided in this chapter. A person's personal representative, guardian, or conservator may disclaim on behalf of the person. The disclaimer shall:

(1) be in writing;

(2) describe the property and the interest in the property to be disclaimed; and

(3) be signed by the person to whom the interest devolves, or his personal representative, guardian, or conservator.

Pursuant to this statute, Oldham executed a disclaimer as to any interest which may have devolved to him from the estate. The disclaimer was timely and properly executed in full compliance with the statutory requirements. The Bank does not dispute this fact. Rather, the Bank disputes the effect the disclaimer had on its judgment lien which it maintains had already attached to Oldham's interest in the assets of the Estate.

Regarding the effect of a disclaimer of·an intestate or testamentary interest, IND.CODE 32-3-2-3(d) provides:

If provision has not been made for another devolution, an interest disclaimed under this section devolves as if the disclaimant had predeceased the decedent. A disclaimer under this section

relates back for all purposes that relate to the interest disclaimed to a time immediately before the death of the decedent. This language is clear. The disclaimer relates back to a time immediately before a decedent's death and the interest disclaimed devolves as if the disclaimant predeceased the decedent. The effect of the disclaimer is the same as if the disclaimed interest had never been created in the disclaimant. As a result, the disclaimed interest is not transferred to the disclaimant at the decedent's death. As there is no transfer of an interest to the disclaimant, there is nothing to which a lien can attach. Consequently, creditors of the disclaimant and his estate have no claim against or right in the disclaimed property. *See Matter of Estate of Wisely* (1980), Ind.App., 402 N.E. 2d 14, *trans. denied.*

In *Wisely*, Mrs. Wisely executed and filed a legally effective disclaimer pursuant to IND.CODE 29-1-6-4, the predecessor of the statute at issue here, renouncing her interest in her husband's estate. The Indiana Department of Revenue argued that a legally effective disclaimer should not affect the assessment of inheritance tax because the tax is imposed at the time of the decedent's death and therefore the tax should be computed according to distribution by the will as if no disclaimer had occurred. Regarding the effect of the disclaimer, this court stated:

> The language of this statute is unmistakably clear: The interest renounced passes as if the person renouncing had predeceased the decedent and the renunciation relates back to the date of the decedent's death *for all* purposes. The effect of this statute upon Mrs. Wisely's renunciation is that her renounced interest passed to her daughters as if she had predeceased her husband and her renunciation related back to the date of her husband's death for all purposes. The renounced interest, therefore, was not transferred to her at decedent's death.

402 N.E.2d at 15–16. In reaching this conclusion, we emphasized that the language of the statute required that the relation back doctrine be applied for all purposes. Thus, the disclaimer statute is effective even as against the Indiana inheritance tax authority. We see no reason why a typical judgment creditor, like the Bank, should be afforded any greater rights than the Indiana taxing authorities.

In the case at bar, Oldham executed his disclaimer in accordance with the disclaimer statute. Thus, Oldham's disclaimer related back to a time immediately before his father's death and he is treated as though he predeceased his father. By virtue of the disclaimer statute, therefore, no property from the estate, real or personal, was passed to Oldham at his father's death. There having been no interest passed to Oldham from the estate, there was nothing to which the Bank's judgment lien against him could attach. The Bank, therefore, had no claim against or right in the disclaimed property.

■ The Bank attempts to avoid this result, however, by characterizing its judgment lien as an encumbrance. This is of significance in light of IND.CODE 32-3-2-10 which designates certain circumstances which act to bar a person's right to disclaim an interest. That statute states in pertinent part:

> The right to disclaim an interest is barred after any of the following events:
> (1) An assignment, conveyance, encumbrance, pledge, or transfer of the interest.

The Bank argues that by reason of the judgment it obtained against Oldham prior to his father's death, an involuntary encumbrance was created attaching at the moment of death to any interest Oldham had in the Estate. In furtherance of this contention, the Bank argues that there is no requirement that any of the events listed in the statute result from the voluntary actions or conduct of the disclaimant.

The Bank's argument presents nothing more than an exercise in linguistic gymnastics. By merely characterizing its judgment lien as an encumbrance, it attempts to sidestep the entire operation of the disclaimer statute. We observe that the event which the bank claims created the encumbrance occurred before the event creating

the interest against which the encumbrance allegedly applied. In other words, the judgment lien arose before Oldham's father died. It is axiomatic that an heir or devisee cannot gain any interest in a decedent's estate at least until the decedent dies. At no time prior to his father's death, therefore, did Oldham have an interest in the estate which could become encumbered. He did not gain an interest in the Estate which could become encumbered until after his father died. Thereafter, however, he executed a disclaimer which treated the disclaimed interest as if it had never been created in the disclaimant. Thus, by virtue of the disclaimer statute, Oldham never gained an interest in the Estate which could become encumbered.

This is not to say that an encumbrance arising *after* the property passes to an individual can be defeated by a subsequent and properly executed disclaimer. The statute clearly prohibits this result. That is the situation at which IND.CODE 32–3–2–10 is directed. It has no application, however, to events occurring *prior* to the event creating the interest which the disclaimant later attempts to renounce. For the same reason, the voluntariness of the "encumbrance" is irrelevant in this instance. The Bank will not now be permitted to miraculously change its lien into an encumbrance. Plain and simply put, the Bank held a previously acquired judgment lien against Oldham; nothing more, nothing less. The appropriate manner of analyzing the facts at bar have been discussed above and we will not repeat it here.

ISSUE II: *Acceptance*

■ Shortly after his father's death, Oldham executed an affidavit for transfer of real estate on the tax transfer books, pursuant to IND.CODE 6–1.1–5–7, relating to the residential property which his father had devised him in the will. The Bank asserts that this act constituted an acceptance of the real estate which precluded him from later attempting to disclaim it. In support of its position the Bank relies solely upon IND.CODE 32–3–2–11 which provides as follows:

The right to disclaim an interest or a benefit under an interest is barred by an acceptance of the interest or benefit, to the extent that the interest or benefit is accepted.

■ Generally speaking, legal title to real property devised by will vests in the devisee upon the decedent's death by operation of law. *Helvey v. O'Neill* (1972), 153 Ind.App. 635, 288 N.E.2d 553; IND.CODE 29–1–7–23. It has long been recognized, however, that a person cannot be forced to accept property against his will and therefore a transfer of title is not complete until it is accepted by the recipient. *See Jewett v. Commissioner* (1982), 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170. The question before us regards the effect of the affidavit to transfer executed by Oldham. An analogous situation was present in *Indiana Department of State Revenue v. Estate of Parker* (1985), Ind.App., 485 N.E.2d 1387. In *Parker*, there existed a number of certificates of deposit in the names of the decedent, his wife, and his daughter as joint tenants with rights of survivorship. Shortly after the decedent's death, the daughter executed an application for consent to transfer as contemplated by IND.CODE 6–4.1–8–4. She subsequently executed a disclaimer of any interest in the jointly held certificates. The department of revenue argued that the execution of the consent to transfer constituted an acceptance of her survivorship interest and thus barred her attempt to disclaim under IND. CODE 32–3–2–11. This court rejected such reasoning. Upon examining the consent to transfer statute, we noted that the purpose of such provision is to provide assurance that inheritance taxes will be paid. We held by its plain terms the statute does not, itself, purport to effect a transfer. Accordingly, there was no bar to making a disclaimer.

Similarly, in the case at bar, the execution of the affidavit for consent to transfer here in no way affected the status of the real estate in relation to Oldham. We agree with the trial court that the purpose of IND.CODE 6–1.1–5–7 is to establish a mechanism for changing the property tax records to reflect the status of legal title to

real estate passing by operation of law. The affidavit contemplated by the statute does nothing more than report this event to the appropriate taxing authority. In fact, IND.CODE 6–1.1–5–7(c) provides that "[n]o transfer made under this section has the effect of conferring title upon the person procuring the transfer." There is no evidence whatsoever indicating that Oldham demanded or received any benefits of the real estate. The Estate was in probate and the final account had not been filed. No final transfer or acceptance had been made. Without more, his act of executing the affidavit for consent to transfer did not constitute an acceptance of any interest he had in the property. The trial court correctly concluded that he was not barred from making a disclaimer.

ISSUE III: *Unconstitutional Application of the Disclaimer Statute*

■ The Bank also argues that the trial court's interpretation of IND.CODE 32–3–2–10 and –11 was unconstitutional in that it permitted its vested interest in the estate to become divested without its consent in violation of the due process provisions of the Indiana and United States Constitutions. The Bank's argument here rests entirely upon its contention that it acquired an interest in the Estate property by virtue of its previously acquired judgment lien. As discussed above, Oldham executed an effective disclaimer which related back to a time immediately preceding the decedent's death. There was no interest transferred to Oldham and thus no interest to which the lien could attach. Oldham did not engage in any conduct which acted as a bar to making the disclaimer. The trial court appropriately applied the plain meaning and legal effect of the various provisions of the disclaimer statute in this regard. To the extent the Bank's argument may be construed as an attack on the constitutionality of the disclaimer statute itself, we observe that this court has previously determined that the statute is not unconstitutional as it affects the assessment of inheritance taxes. *Estate of Wisely, supra.*

For all of the above reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

ROBERTSON, J., concurs.

SHIELDS, P.J., dissents with opinion.

SHIELDS, Judge, dissenting.

I vote to reverse the judgment of the trial court. In my opinion Oldham's execution, in his individual capacity, of the affidavit for transfer of real estate on the tax transfer books constitutes an acceptance of that real estate. Therefore, Oldham is precluded from thereafter disclaiming his interest in that real estate by the provisions of IC 32–3–2–11 (1988).

The sole purpose of the affidavit was to protect Oldham's personal interest in the subject real estate from the consequences of unpaid property taxes. It did this by identifying him as the owner of the real estate on the tax records of the auditor's office. As such it constituted an act of control over the real estate inconsistent with the interest and obligation of the estate in the real estate. Although title to the subject real estate devolved to Oldham upon his father's death, the father's estate was entitled to its benefits and suffered its burdens, including the obligation to pay real property taxes.

> Every personal representative shall have a right to, and shall take, possession of all the real ... property of the decedent ... He shall pay the taxes and collect the rents and earnings thereon until the estate is settled or until delivered by order of the court to the distributees. He shall keep in tenantable repair the buildings and fixtures ... He may maintain an action for the possession of real property or to determine the title to same.

IC 29–1–13–1 (1988).

Oldham, as personal representative, could have adequately protected his individual interest in the subject real estate by executing the affidavit as personal representative to obtain the tax statement in that capacity. However, he did not do so. Instead, inconsistent with the estate's in-

terest in the real estate, Oldham obtained the transfer to himself as an individual. In doing so, he was asserting his personal right to the real estate. Thus Oldham's act constituted acceptance of the benefit of ownership as well as the obligations thereof.

*Indiana Dept. of State Revenue v. Estate of Parker* (1985), Ind.App., 485 N.E.2d 1387, is not analogous. The joint tenant in *Parker* merely executed an *application* for consent to transfer. Unlike Oldham who did effect a transfer of ownership on the auditor's records, Parker did not attempt the transfer for which she sought consent. Therefore, the two factual situations are distinguishable. Similarly, IC 6-1.1-5-7(c) is unavailing to the majority's position. Of course a transfer of ownership upon the auditor's records does not confer title upon the person procuring the transfer. That is not the point. Oldham received his fee simple interest upon his father's death. The point is that Oldham accepted that fee simple interest when he acted in his individual capacity to protect his interest by insuring he would receive the tax statements in that capacity rather than as personal representative of the estate.

I vote to reverse the judgment of the trial court.