ZAHRA, J.
(dissenting). I respectfully dissent from the majority’s conclusion that plaintiffs’ mortgage did not pass to JPMorgan Chase Bank, N.A., by operation of law. Under federal law, the Federal Deposit Insurance Corporation (FDIC) has broad statutory powers for resolving the business of a failed bank. The FDIC’s transfer of plaintiffs’ mortgage to Chase was part of a larger, specialized transaction authorized under federal law that was undertaken by the FDIC to resolve the business of Washington Mutual Bank (WaMu), a failed bank. Pursuant to this federal authority, the FDIC was permitted to transfer the assets of WaMu “without any approval, assignment, or consent. .. ,”[1] The particular transaction consummated here was not a simple contract for the sale of assets, as characterized by the *122 majority. The majority’s conclusions represent a fundamental misunderstanding of the FDIC’s authority to liquidate WaMu.
Michigan law has long recognized that a mortgage obtained by operation of law need not be recorded before foreclosure is allowed because the successor mortgagee steps into the shoes of the original mortgagee.[2] Because Chase obtained plaintiffs’ mortgage from the FDIC by operation of law, I would hold it exempt from the recordation requirement of MCL 600.3204(3). I would reverse the judgment of the Court of Appeals.
I. ALL TRANSFERS OF ASSETS UNDER 12 USC 1821(d)(2)(G)(i) OCCUR BY OPERATION OF LAW
The majority correctly concludes that “when the FDIC succeeded to WaMu’s assets, which included plaintiffs’ mortgage, it did so by clear operation of a statutory provision — 12 USC 1821(d)(2)(A). With respect to this transfer, the FDIC acquired plaintiffs’ mortgage by operation of law.”[3] But I disagree with the majority that the subsequent transfer, from the FDIC to Chase, did not occur by operation of law. In fact, the FDIC transferred WaMu’s assets to Chase by operation of another statutory provision — 12 USC 1821(d) (2) (G) (i) (II). This provision empowers the FDIC to resolve the business of a failed bank by transferring any asset or liability “without any approval, assignment, or consent with respect to such transfer.”[4]
The majority, following the erroneous logic employed by the Court of Appeals, characterizes the transaction *123 between the FDIC and Chase as a simple contractual sale.[5] Simply put, this characterization fundamentally misunderstands the structure of the agreement. Rather than an ordinary sale of assets, this was a specialized transaction facilitated by the FDIC in accordance with its mandate to resolve the businesses of failed banks.[6] The FDIC, through its statutory powers, enabled a transition in which it stepped into WaMu’s shoes as receiver and took possession of WaMu’s assets and liabilities without any assignment; then, almost instantaneously, the FDIC transferred substantially all of WaMu’s assets and liabilities to Chase. This transfer of assets was intended to be accomplished by operation of law and again without an assignment. The FDIC confirmed as much in its October 2, 2008, affidavit, which it executed contemporaneously with the transfer. In pertinent part, the FDIC stated the following:
2. On September 25, 2008, Washington Mutual Bank, formerly known as Washington Mutual Bank, FA (“Washington Mutual”), was closed by the Office of Thrift Supervision and the FDIC was named receiver.
3. As authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821 (d)(2) (G-)(i) (II), the FDIC, as receiver of Washington Mutual, may transfer any asset or liability of Washington Mutual without any approval, assignment, or consent with respect to such transfer.
*124 4. Pursuant to the terms and conditions of a Purchase and Assumption Agreement between the FDIC as receiver of Washington Mutual and JPMorgan Chase Bank, National Association (“JPMorgan Chase”), dated September 25, 2008 (the “Purchase and Assumption Agreement”), JPMorgan Chase acquired certain of the assets, including all loans and all loan commitments, of Washington Mutual.
5. As a result, on September 25, 2008, JPMorgan Chase became the owner of the loans and loan commitments of Washington Mutual by operation of law.[7]
This affidavit is not, as the majority suggests, the FDIC’s attempt to make, by unilateral declaration, the transaction one completed by operation of law.[8] Rather, it is the FDIC, which undoubtedly has more familiarity with this particular type of transaction than the majority,[9] accurately characterizing the actions it took pursuant to federal law.[10] I cannot accept the majority’s *125 conclusion that the FDIC and Chase entered into a simple sale rather than a transfer by operation of law considering that the FDIC’s receivership powers— reserved only for the special situation of a bank failure — do not contemplate ordinary sales like the one suggested by the majority. Pursuant to 12 USC 1821 (d) (2) (G) (i), the FDIC as receiver may either merge a failed bank with a healthy bank[11] or transfer any asset or liability of the failed bank “without any approval, assignment, or consent with respect to such transfer.”[12] Under either provision, the statute provides for transfers by operation of law. If the FDIC attempted to transfer assets of a failed bank without relying on one of the provisions of 12 USC 1821 (d) (2) (G) (i), it would be acting outside the scope of its statutory authority.[13]
The majority erroneously concludes that a transfer completed by operation of law must be one that occurred involuntarily, ignoring basic business realities. For example, when two companies merge — an action *126 requiring affirmative intent and, often, substantial consideration[14] — the law is settled that the assets of the merging companies vest in the resulting company by operation of law.[15] And even the majority admits that a merger results in the transfer of assets by operation of law.[16] Thus, the majority’s conclusion that a transfer by operation of law can only occur involuntarily simply does not follow.
Moreover, the majority’s conclusion that operation-of-law transfers must be fully involuntary ignores the standards applicable to the most fundamental operation-of-law transactions. Surely the majority would agree that transfers accomplished by intestacy or *127 a joint tenancy occur by operation of law.[17] Yet neither of these traditional operation-of-law transfers can be completed without the affirmative decision of the recipient to accept the property.[18] Michigan law allows a party to disclaim an operation-of-law conveyance.[19] Thus, a transfer by operation of law cannot occur unless the recipient voluntarily decides not to exercise his or her right to disclaim the conveyance. Our sister court in New Hampshire eloquently described the rationale behind a right of disclaimer:
[W]e held that a devisee has the power to renounce a testamentary gift. An intestate heir also may disclaim an intestate share under our common law. The same is true of a right of survivorship in a joint tenancy.... The motivating factor permitting renunciation of these interests is that one should not be forced to accept burdensome, unbar-gained for tenders.[20]
*128 By similar logic, the fact that Chase could have refused, but voluntarily accepted, the transfer does not destroy its character as an operation-of-law transaction.
Having established that a transfer by operation of law need not be involuntary, I have no trouble concluding that the instant transaction was completed by operation of law. I am also not troubled by the conclusion that the FDIC/Chase transaction was for all intents and purposes the equivalent of a merger. By this transaction, Chase absorbed substantially all of WaMu’s assets and liabilities. In a September 25, 2008, press release announcing the transaction, FDIC Chairman Sheila C. Bair called the transaction “simply a combination of two banks.”[21] Chase did not sort through the various assets of WaMu and pick and choose only the most appealing items; it absorbed the entire bank except for very select assets and liabilities that remained with the receiver.[22] The first page of the *129 purchase and assumption (P&A) agreement indicates that Chase acquired much more than a loan portfolio, stating that with the FDIC acting as the conduit, it received “substantially all of the assets and assumed] all deposit and substantially all other liabilities” of WaMu.[23] And while the P&A agreement established the framework for the transfer, the actual transaction was completed under the FDIC’s statutory authority to transfer assets and liabilities “without any approval, assignment, or consent. . . .”[24] Having received the assets and liabilities without any assignment, Chase stepped into WaMu’s shoes and began occupying WaMu’s legal status. While this conclusion is perhaps the result of a legal fiction, like a merger, this is the manner in which the law treats these transactions. Accordingly, no further formalities were necessary to vest the rights Chase acquired from WaMu because, as with a merger, they vested upon completion of the deal.
At its heart, the majority’s and the Court of Appeals’ errors are in redefining this transaction, giving short shrift to the specialized context in which it occurred. The FDIC and Chase did not execute a simple contractual sale; it was a transfer of assets and liabilities consummated without any assignments that only could have been completed under the FDIC’s statutory authority for resolving failed banks. Accordingly, I would *130 hold that Chase acquired plaintiffs’ mortgage by operation of law.[25]
II. THE RECORDING REQUIREMENT OF MCL 600.3204(3) DOES NOT APPLY TO TRANSACTIONS PROPERLY COMPLETED WITHOUT ASSIGNMENT, INCLUDING MORTGAGES ACQUIRED BY OPERATION OF LAW
MCL 600.3204 provides the requirements for foreclosure by advertisement. MCL 600.3204(1) lists the four general requirements before a mortgagee can foreclose:
(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
(c) The mortgage containing the power of sale has been properly recorded.
(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
MCL 600.3204(3) states an additional requirement:
If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under [MCL 600.3216] *131 [setting the conditions for the sheriffs sale] evidencing the assignment of the mortgage to the party foreclosing the mortgage.
Chase was exempt from the requirements of MCL 600.3204(3) because it obtained the mortgage by operation of law. The key phrase in making this determination is “evidencing the assignment.” If there has been no assignment — i.e., if the mortgage was transferred by operation of law — then there can be no chain of title because the party holding the mortgage is, by law, the original mortgagee. This is so even if the party holding the mortgage was not the party that actually recorded the mortgage. In other words, the statute implies that when no assignment has occurred, the party holding the mortgage has stepped into the shoes of the original mortgagee. When there has been no assignment of a mortgage, there can be no assignment to record. Accordingly, because Chase acquired the plaintiffs’ mortgage by operation of law instead of by assignment, and was thus legally considered the original mortgagee, it was not required to record anything in the chain of title.
Michigan law has long recognized that only transfers completed by assignment need to be recorded before foreclosure by advertisement is permitted. In the 1885 decision of Miller v Clark, this Court analyzed the foreclosure-by-advertisement statute and determined that mortgages obtained by operation of law need not be recorded before foreclosure by advertisement is permitted.[26] In Miller, the mortgagee was an individual who died with the mortgage passing as part of his estate to *132 the guardian of his heirs.[27] The guardian foreclosed on the mortgage without recording it.[28] This Court, in discussing whether the recording requirement applied to the peculiar way that the guardian came to possess the mortgage without an assignment, held that “[t]he assignments which are required to be recorded are those which are executed by the voluntary act of the party, and this does not apply to cases where the title is transferred by operation of law . .. .”[29] So if there is no assignment to record because the mortgage passed by operation of law, then the recording requirement does not apply.[30] Because Chase obtained the plaintiffs’ mortgage without an assignment pursuant to the FDIC’s *133 statutory authority, MCL 600.3204(3) did not require Chase to record the mortgage before foreclosing.
Alternatively, it is not at all clear that the transfer must even be characterized as one completed by operation of law to be exempt from the recordation requirement of MCL 600.3204(3). Indeed, the statutory language itself does not explicitly exempt transfers completed by operation of law; instead, it requires recordation when there is an assignment.[31] So in 1885, when this Court held that an operation-of-law transaction was exempt from the recordation requirement, it did so not because the transaction was completed by operation of law but because the transaction was not an assignment.[32] Thus, even if the instant transaction was not by operation of law per se, it would still be exempt from the recording statute if no recordable assignment existed. And indeed, pursuant to 12 USC 1821 (d)(2)(G)(i)(II), the FDIC transferred WaMu’s assets to Chase without an assignment. So even accepting the majority’s conclusion that this was not a transfer by operation of law, MCL 600.3204(3) would still not apply because no assignment existed and none was necessary to complete the transfer.[33]
*134 III. CONCLUSION
By redefining the character of the transaction between the FDIC and Chase, the majority, like the Court of Appeals before it, erroneously concludes that it was an ordinary contractual sale rather than a specialized transfer by operation of law. In reality, the transaction was possible only because of the FDIC’s special statutory powers for resolving the business of a failed bank like WaMu. Moreover, Chase was not required to record the mortgage before foreclosing because it obtained the mortgage by operation of law and stepped into WaMu’s shoes as the original mortgagee. Thus, the recording requirement of the foreclosure-by-advertisement statute was inapplicable. Accordingly, I respectfully dissent and would reverse the judgment of the Court of Appeals.[34]
Young, C. J., and Mary Beth Kelly, J., concurred with Zahra, J.

 12 USC 1821 (d) (2) (G) (i) (II).

 Miller v Clark, 56 Mich 337, 340-341; 23 NW 35 (1885).

 Ante at 108-109.

 12 USC 1821 (d) (2) (G) (i) (II)

 The majority states:
Under 12 USC 1821, the FDIC is empowered to transfer the assets of a failed bank “without any approval, assignment, or consent ...However, in this case, it did not avail itself of that authority. Instead, the FDIC sold WaMu’s assets to defendant pursuant to a purchase and assumption (P&A) agreement. [Ante at 103.]

 12 USC 1821 (c)(2)(A) (ii) (“The [FDIC] shall be appointed receiver, and shall accept such appointment, whenever a receiver is appointed for the purpose of liquidation or winding up the affairs of an insured Federal depository institution ...

 Emphasis added. The affidavit was executed contemporaneously with the transfer at issue in this case, long before any litigation commenced.

 Ante at 112 n 25 (“Although the FDIC’s affidavit purports that the sale of WaMu’s assets to defendant was effected by operation of law, the FDIC may not by unilateral declaration make it so.”).

 Between October 1, 2000, and December 1, 2012, the FDIC was appointed receiver or conservator in 502 bank failures. See Failed Bank List, FDIC, available at <http://www.fdic.gov/bank/individual/ failed/banklist.html> (accessed December 20, 2012).

 Though not binding on this Court, the FDIC’s characterization of a transfer under its governing statute should be accorded respectful consideration. See United States v Mead Corp, 533 US 218, 227; 121 S Ct 2164; 150 L Ed 2d 292 (2001) (“[A]gencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all of those choices bind judges to follow them, they certainly may influence courts facing questions the agencies have already answered.”); Skidmore v Swift & Co, 323 US 134, 140; 65 S Ct 161; 89 L Ed 124 (1944) (“We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.”); see also Wells Fargo Bank v FDIC, 354 US App DC 6; 310 F3d *125 202, 208 (2002) (“At the very least, however, because the FDIC is charged with administering this highly detailed regulatory scheme, we may resort to its ‘body of experience and informed judgment’ for guidance to the extent that its position is persuasive.”). The majority instead chooses to entirely ignore the FDIC’s position that it, in fact, transferred the WaMu assets to Chase by operation of law. While we are ultimately interpreting the requirements of MCL 600.3204(3), the question whether the transfer at issue occurred “by operation of law” truly concerns the character of the transaction as defined by federal law, which the FDIC is tasked with administering. Thus, contrary to the majority’s assertion, the issues raised in this case certainly implicate federal law and the majority would do well to give some deference to the contemporaneous transaction documents indicating that this transfer is understood under federal law to have been completed by operation of law.

 12 USC 1821 (d)(2) (G)(i)(I).

 12 USC 1821 (d) (2) (G) (i) (II).

 Louisiana Pub Serv Comm v FCC, 476 US 355, 374; 106 S Ct 1890; 90 L Ed 2d 369 (1986) (“[A]n agency literally has no power to act... unless and until Congress confers power upon it.”).

 For example, when AOL and Time Warner merged on January 10, 2000, in the largest merger in history, AOL purchased Time Warner for $165 billion to facilitate the merger. Both companies intended to enter the deal, and hefty consideration was paid. See Hansell, Media Megadeal: The Overview; America Online Agrees to Buy Time Warner for $165 Billion; Media Deal is Richest Merger, NY Times, January 11, 2000, available at <http://nytimes.eom/2000/l/ll/business/ media-megadeal-overview-america-online-agrees-buy-time-warner-for165-billion.html> (accessed December 20, 2012).

 See 12 USC 215(e) (“All rights, franchises, and interests of the individual consolidating hanks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall he transferred to and vested in the consolidated national hanking association by virtue of such consolidation without any deed or other transfer.”); MCL 450.1724(b) (“The title to all real estate and other property and rights owned by each corporation party to the merger are vested in the surviving corporation without reversion or impairment.”).

 Ante at 111 (“Had a merger occurred . .., defendant would have a strong argument that it had merely stepped into the shoes of WaMu.”). The majority further states that the FDIC could have merged WaMu and Chase pursuant to 12 USC 1821(d)(2)(Gr) (i)(I) without Chase’s consent. But the statute in no way proposes that the FDIC could merge a failed bank and a healthy bank without the healthy hank’s consent. On the contrary, it is 12 USC 1821(d)(2)(G)(i)(II) that allows transfers without approval. The majority’s concept of a forced merger utterly lacks a statutory basis and further demonstrates the majority’s misunderstanding of the FDIC’s authority.

 See, e.g., Simon v Simon’s Estate, 158 Mich 256, 259; 122 NW 544 (1909) (“The property of one dying intestate goes, by operation of positive law,... to certain persons in certain shares.”); Klooster v City of Charlevoix, 488 Mich 289, 303; 795 NW2d 578 (2011) (“When one of only two joint tenants dies, an estate in land passes by operation of law to the survivor.”).

 It is also worth noting that both types of transfers occur pursuant to statutory authority. MCL 700.2101(1) (“Any part of a decedent’s estate not effectively disposed of by will passes by intestate succession to the decedent’s heirs as prescribed in this act....”) (emphasis added); Title of 1925 PA 126, MCL 557.81 et seq. (“An act to provide for the payment to the survivor of husband and wife, of land contracts, and of notes and other obligations secured by a mortgage, given as part of the purchase price of lands held as a tenancy by the entirety, and the vesting of the title of the mortgage or land contract in the survivor.”); MCL 491.616(2) (creating a joint tenancy in multiperson bank accounts unless specified otherwise).

 MCL 700.2901 to 700.2912.

 In re Lamson Estate, 139 NH 732, 733-734; 662 A2d 287 (1995) (citations omitted); see also Nat’l City Bank of Evansville v Oldham, 537 NE2d 1193, 1197 (Ind App, 1989) (“Generally speaking, legal title to real property devised by will vests in the devisee upon the decedent’s death by *128 operation of law. It has long been recognized, however, that a person cannot be forced to accept property against his will and therefore a transfer of title is not complete until it is accepted by the recipient.”) (citations omitted); 20 Am Jur 2d, Cotenancy and Joint Ownership, § 4 (“Under the Uniform Disclaimer of Property Interests Act, a surviving joint tenant may disclaim the transfer of any property or interest by right of survivorship by delivering a written disclaimer. The purpose of allowing such disclaimer is that one should not be forced to accept burdensome, unbargained-for tenders.”).

 FDIC, Press Release, JPMorgan Chase Acquires Banking Operations of Washington Mutual, September 25, 2008, available at chttp:// www.fdic.gov/news/news/ press/2008/pr08085.html> (accessed December 20, 2012) (emphasis added).

 See, e.g., schedule 3.5 of the purchase and assumption (P&A) agreement, captioned “Certain Assets Not Purchased” (excluding only payouts on or refunds for insurance policies, actions or judgments against directors or underwriters of the failed bank, leased premises, fixtures, and equipment, and criminal/restitution orders in favor of the failed bank from the agreement); schedule 2.1 of the P&A agreement, captioned “Certain Liabilities Not Assumed” (excluding only preferred stock and pending litigation against WaMu, subordi *129 nated and senior debt, some employee benefit plans sponsored by WaMu’s holding company, and certain deferred compensation and consulting agreements maintained by WaMu).

 See also Brooks, The Federal Deposit Insurance System: The past and the potential for the future, 5 Ann R Banking L 111, 112 (1986) (“A purchase and assumption transaction is a merger of the failing bank into a successful bank; the successful bank assumes all deposit liabilities of the failing bank.”).

 12 USC 1821 (d) (2) (G) (i) (II).

 Alternatively, as fully explained in part II of this opinion, I question whether the majority’s conclusion that the transfer did not occur by operation of law resolves the matter. Indeed, the operative recording statute, MCL 600.3204(3), only requires the recordation of mortgages that have been assigned, and pursuant to 12 USC 1821(d)(2)(G)(i)(II), the mortgage here was transferred without an assignment.

 Miller, 56 Mich at 337. The foreclosure-by-advertisement statute in effect in 1885, 1871 CL 6913, contained different language than the current statute but similarly required the recordation of mortgage assignments before foreclosure was permitted.

 Id. at 339-340.

 Id. at 340.

 Id. at 340-341 (emphasis added). The majority relies on this quote to erroneously conclude that a transfer by operation of law must be involuntary. But Miller made no such determination. The quoted language only held that voluntary assignments must be recorded, making no determination whatsoever with respect to voluntary operation-of-law transactions like corporate mergers or the transfer that took place here.
The majority also concludes that the rule of Miller does not control because the recording requirement has been modified and the “triggering mechanisms for recordation” are different now than when Miller was decided, with the mechanism now being only that the foreclosing party “is not the original mortgagee.” As explained earlier, this errant focus on the “triggering mechanisms” prevents the majority from viewing the statute as a whole and ignores the fact that MCL 600.3204(3) still only requires a recording to exist “evidencing the assignment.” Again, one cannot evidence an assignment that does not exist and need not exist to effectuate the transfer. An assignment is thus necessary both under MCL 600.3204 as it exists now and as its predecessor provided when Miller was decided.

 Michigan’s Attorney General reiterated the Miller holding in 2004, stating that “[a] mortgagee cannot validly foreclose a mortgage by advertisement unless the mortgage and all assignments of that mortgage {except those assignments effected by operation of law) are entitled to be, and have been, recorded.” OAG, 2003-2004, No 7147, p 93 (January 9, 2004) (emphasis added). When the Attorney General made this statement, the recording requirement was found in MCL 600.3204(1) (c) but *133 used the same language as the current statute. MCL 600.3204(1)(c), as amended hy 1994 PA 397, provided in relevant part:
The mortgage containing the power of sale has been properly recorded and, if the party foreclosing is not the original mortgagee, a record chain of title exists evidencing the assignment of the mortgage to the party foreclosing the mortgage.

 The original statute, 1871 CL 6913, required recording if the mortgage had been assigned; the current statute, MCL 600.3204(3) requires a recording “evidencing the assignment.”

 See Miller, 56 Mich at 337.

 In responding to this alternative argument, the majority states that a record chain of title must exist before foreclosure is permitted, yet it does not say what should he recorded in the chain of title to “evidenc[e] *134 the assignment” as required by MCL 600.3204(3). Here, no assignment occurred, so nothing exists that can be recorded in the chain of title. Indeed, under the majority’s construction, Chase could never satisfy MCL 600.3204(3) because it is not the original mortgagee, but it also lacks the ability to record an assignment in the chain of title.

 Because I conclude that no defect existed in the foreclosure, it is unnecessary for me to decide whether a defect in the foreclosure renders the foreclosure sale voidable or void ab initio. However, because the majority reaches this issue, I note my agreement with the majority’s reasoning on this issue and conclusion that “defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void ab initio.” Ante at 115.